**GARDNER MACHINERY CORPORA- TION et al., Appellants,**

v.

**U. C. LEASING, INC., Appellees.**

**No. 8022.**

Court of Civil Appeals of Texas, Beaumont.

Jan. 12, 1978.

Rehearing Denied Feb. 9, 1978.

Thomas O. Harris, Houston, for appellants.

Daniel H. Johnston, Jr., Houston, for appellees.

CLAYTON, Justice.

Appellee U. C. Leasing, Inc., brought this suit against Gulf Coast Crane & Rigging, Inc., and Gardner Machinery Corporation for default on a lease contract involving four cranes. Appellee also sued Gardner Machinery Corporation (hereinafter referred to as Corporation) and its president, William C. Gardner, Jr., for conversion of the proceeds of an agreed sale of one of the cranes. The case was tried before a jury, and judgment was entered upon the verdict in favor of appellee and against Gardner Machinery Corporation in the sum of $4,000 and against the Corporation and William C. Gardner, Jr., jointly and severally, in the sum of $80,000, from which judgment appellants appeal.

Gardner Corporation and appellee entered into a business arrangement in 1969. The Corporation purchased four heavy equipment cranes from the manufacturer of such cranes. In order to finance such purchase, the Corporation sold the cranes to appellee, took the proceeds of such sale and paid the manufacturer the total purchase price. The Corporation then leased the cranes from appellee and agreed to pay a certain amount of rental over a certain period of time. This amount of rental is referred to as the "payoff" figure or amount. At the end of the lease, if the payoff amount had been paid, title to such cranes would vest in the Corporation. Under their agreement, the Corporation, at all times, had the right to sell any or all of such cranes. Title to such cranes remained in appellee, and, whenever a crane was sold, a bill of sale would be executed by appellee to the new purchasers.

The Corporation attempted to negotiate a sale of the four cranes to Gulf Coast Crane & Rigging, Inc., but the sale was not consummated. Instead, the cranes were leased by Gulf Coast Crane & Rigging, Inc., from U. C. Leasing, Inc., appellee, with the Corporation guaranteeing the lease. Subsequently, the new lessee defaulted, and appellant William G. Gardner, Jr., met with a representative of appellee, and they negotiated a new agreement with reference to the four cranes. The trial court held that this new agreement constituted a novation of all previous agreements between appellants, appellee, and Gulf Coast Crane & Rigging, Inc. No complaint of this holding by the trial court is made by either party. This oral agreement, therefore, determines the obligations of appellants and appellee for the purpose of judging their subsequent actions. At this meeting, and at the time of making this new agreement, Gardner purchased for cash one of the cranes. The parties agreed that, in the words of appel-

lee's witness, " . . . Bill Gardner would look for buyers for the three remaining cranes, he would locate those buyers, bring them to us, and remit any funds that were received to us." They also agreed upon the total amount which was to be remitted to appellee. It was further agreed that, if the sale price for the three cranes exceeded the total amount of the "payoff", then the Corporation would retain the excess, and, if the sale price was not equal to the amount of the "payoff", then the Corporation would be obligated to pay to appellant the difference.

Pursuant to this agreement, the Corporation sold two of the cranes and remitted to appellee the sum of $104,000. The Corporation subsequently sold the remaining crane for $80,000. The amount to be remitted was in dispute, appellants' contention being the sum to be remitted was $35,996.87 and appellees asserting the proper amount would be $84,277.74. The Corporation then tendered a check to appellee in the sum of $37,400.29 in full settlement. When there was no immediate response, the proceeds of the sale were used for general corporate purposes of the Corporation. Finally, sixty-two days after the tender letter, appellee returned the tender and refused to accept the same.

In answering the special issues, the jury found that in accordance with the oral agreement between the parties the sum of $84,277.74 was due and owing to the plaintiff (appellee) U. C. Leasing, Inc.; that the Corporation, acting by and through its officers, agents, servants, or employees, converted the proceeds from the sale of the fourth crane, and that William C. Gardner, Jr., in his capacity as President of the Corporation did not participate in, instigate, aid, or abet the Corporation in such conversion. Special Issue No. 4 inquired as to whether or not the plaintiff (appellee) waited more than a reasonable time to return the check to Gardner Machinery Corporation. This issue was predicated upon an affirmative answer to the issue inquiring of the conversion on the part of William C. Gardner, Jr., to which the jury answered in the negative. The jury did not answer this Special Issue No. 4.

The trial court set aside the finding that Gardner, individually, did not participate in the conversion, and held that he was liable for conversion in his individual capacity, and the court entered judgment against the Corporation and Gardner, jointly and severally, for conversion of the sale price of the crane in the amount of $80,000.

■ Appellant urges in its first point that the trial court erred in holding William C. Gardner, Jr., individually liable because a corporate failure to pay indebtedness is not a conversion. The law is well settled that an officer of a corporation is liable for any tort committed by the corporation through him. *Western Rock Company v. Davis*, 432 S.W.2d 555 (Tex.Civ.App.—Fort Worth 1968, no writ); *Permian Petroleum Company v. Barrow*, 484 S.W.2d 631 (Tex.Civ.App.—El Paso 1972, no writ). Furthermore, this is true whether or not the officer personally benefits from the tort committed. *McCollum v. Dollar*, 213 S.W. 259 (Tex. Comm.App.1919, jdgmt adopted). The liability of Gardner individually depends, therefore, on whether the refusal to pay over the proceeds of the sale of the fourth crane was a tort by the Corporation or simply a breach of contract. On this point, both parties apparently are in agreement.

The oral agreement between the parties consisted of two completely separate and distinct agreements or undertakings, namely: (1) The parties agreed on the amount of the liability of the Corporation under its guaranty of the Gulf Coast lease which was in default, and (2) The parties agreed that the Corporation would act as appellee's agent in the sales of the cranes. The terms of this second portion of the agreement are not in substantial dispute, nor, when this latter portion of the agreement is isolated can there be any dispute over its legal effect.

The evidence shows that appellant Gardner agreed to sell the cranes and remit the proceeds of those sales to appellee. The absolute title and ownership in and to the cranes was in appellee. It is true that the

Corporation's obligation to remit proceeds was limited by the extent of its agreed obligation, and it is likewise true that the Corporation would have been obligated, after remitting all of the proceeds, for any deficiency on the total amount of its obligation. These conditions do not in any way alter, however, the absolute duty of the Corporation to remit the proceeds obtained from the sales of the cranes.

Under the facts of this case, the cranes were in possession of Gulf Coast, the Corporation was to sell the cranes, remit the proceeds to appellee and obtain a bill of sale for the purchaser. This factual situation seems to be almost identical with the facts in *Searle-Taylor Mach. Co., Inc. v. Brown Oil Tools, Inc.*, 512 S.W.2d 335, 337–338 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.). The court held in that case that:

> "Appellant . . . was authorized to sell the machinery on behalf of appellee and to collect the proceeds of sale for appellee's benefit. As appellee's agent in such transaction, it had a duty to notify appellee of its collection and to make remittance of the proceeds to appellee within a reasonable period of time. . . Until remittance was effected, appellant had the duty to keep and maintain the sales proceeds as a separate and identifiable account for the benefit of appellee."

■ We hold that the sales proceeds, coming into the hands of the Corporation, constituted trust funds and the Corporation owed a duty to appellee to account for such funds. A fiduciary relationship existed between appellee, as principal, and the Corporation, as agent, with respect to the sales proceeds. *Searle-Taylor Mach. Co. Inc. v. Brown Oil Tools, Inc., supra.* The breach of this duty by the Corporation and through its President, William C. Gardner, Jr., constituted a tort of conversion for which both the Corporation and William C. Gardner, Jr., are liable. Appellants' first point is overruled.

■ Appellants' second point is that the jury finding as to the amount owing under the contract is so against the great weight and preponderance of the evidence as to be manifestly unjust. The method of calculating the amount of the indebtedness was in dispute. The total amount was in dispute. However, we feel no useful purpose would be served by reciting the conflicting evidence given by the parties. Appellee's witness testified the amount to be $84,277.74. Appellants testified the amount was $35,996.87. The jury chose to believe the appellee. The evidence presented was of probative value to support the findings of the jury. This point is overruled.

■ The third point urges error of the trial court in submitting the conversion issues. In view of our disposition of the question concerning conversion we agree that these issues should not have been submitted. However, it is clear that no harm was suffered by Gardner individually even though there was no factual dispute justifying the submission of such issues. The jury found that he had nothing to do with the failure by the Corporation to turn over the proceeds (although this finding was properly disregarded by the trial court). The error, if any, did not amount to such a denial of the rights of the appellant "as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case." *Tex.R.Civ. P. 434*; *Associates Investment Company v. Cobb*, 386 S.W.2d 578 (Tex.Civ.App.—Beaumont 1964, no writ).

■ Appellants further complain that the submission of the conversion issues prevented them from obtaining a jury answer to Special Issue No. 4 which related to the delay in returning the appellants "in full settlement" check. Special Issue No. 4 was predicated on an affirmative answer to Special Issue No. 3, which inquired as to Gardner's actions relating to conversion. Appellants made no objection to Special Issue No. 4; so, we have nothing before us to consider in connection therewith. The complaint is made that since the jury answered Special Issue No. 3 in the negative, they could not answer Special Issue No. 4 because of its predicate on an affirmative answer to Spe-

cial Issue No. 3. The only objections to the charge made by appellants were:

" . . . objects to . . . Issue No. 2 in the following respects:

"1. There is no dispute in the evidence as to the facts behind this charge.

"2. As a matter of law it is impossible to convert monetary proceeds.

"And I will make the same objection to No. 3."

The purported objection to Special Issue No. 3 is in direct conflict with the provisions of *Tex.R.Civ.P. 274*, and cannot be considered by this court. *Sledge . v. Murphy*, 284 S.W.2d 938 (Tex.Civ.App.—Waco 1955, no writ). There being no valid objections in the charge to Special Issues No. 3 and No. 4, there is nothing before us for review. This point is without merit and is overruled.

No error being shown, the judgment of the trial court is affirmed.

AFFIRMED.