Matter of CAROLIN PAXSON ADVERTISING, INC., Debtor.

TEXAS COMMERCE BANK—EL PASO, NATIONAL ASSOCIATION, Appellant,

v.

MARSH MEDIA OF EL PASO d/b/a KVIA–TV and KINT–TV, Appellees.

No. 90–8675
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Aug. 13, 1991.

Corey W. Haughland, Grambling & Mounce, El Paso, Tex., for appellant.

Charles Addison Beckham, Jr., James W. Brewer, Kemp, Smith, Duncan & Hammond, El Paso, Tex., for Marsh Media of El Paso.

Hal F. Morris, Scott & Hulse, El Paso, Tex., for KINT–TV.

Before JOLLY, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The issue in this case is whether the bankruptcy court properly imposed a constructive trust on certain assets held by a Chapter 7 debtor. Finding that Appellees

were not entitled to this equitable remedy, we reverse and remand.

## I.

Carolin Paxson Advertising, Inc. ("Paxson") was an advertising agency in El Paso, Texas for approximately fifteen years. Paxson served its clients primarily by purchasing air-time on their behalf from various local television and radio stations, including Marsh Media of El Paso d/b/a KVIA–TV and KINT–TV Channel 26 (the "Stations"). In payment for its services, Paxson received commissions from its advertisers.

Each purchase of broadcast time from KVIA and KINT was confirmed by a "Broadcast Order" prepared by Paxson, which purported to relieve Paxson of liability for broadcast time purchased for its clients. After KVIA or KINT provided advertising time, they sent invoices to Paxson. Paxson would then bill the advertiser, and the advertiser would send a check to Paxson to cover Paxson's commission and the cost of air-time. Paxson would then pay the Stations for air-time.

Paxson sought relief under Chapter 7 of the Bankruptcy Code in January 1989. Two years earlier, Texas Commerce Bank—El Paso, N.A. ("TCB") had loaned money to Paxson in exchange for a security interest in Paxson's accounts receivable, which TCB subsequently perfected. In response to Paxson's Chapter 7 filing, TCB sought relief from the automatic bankruptcy stay to foreclose on its security interest in the collateral. KVIA asserted that pursuant to the Broadcast Orders the money owed to Paxson by the advertisers for airtime was not subject to TCB's security interest because it was not the property of Paxson's estate. KINT–TV intervened and joined KVIA's complaint. Following trial on the merits, the Bankruptcy Court imposed a constructive trust in favor of KVIA and KINT on the funds owed by the advertisers.

TCB subsequently filed a motion to amend the judgment, which the bankruptcy court essentially denied.[1] After reviewing the bankruptcy court's judgment de novo, the district court affirmed. TCB now appeals.

## II.

■ The sole issue here is whether Paxson had a duty, enforceable by constructive trust, to convey the funds received from the advertisers for broadcast time to KVIA and KINT. Resolution of this issue depends upon Texas law, which has the dominant contact with those funds. *See In re Auto–Train Corp. Inc.,* 810 F.2d 270, 273 (D.C.Cir.1987); *In re Jones,* 768 F.2d 923, 927 (7th Cir.1985).

■ A constructive trust generally arises when a person with legal title to property owes equitable duties to deal with the property for the benefit of another. *Wheeler v. Blacklands Prod. Credit Ass'n,* 627 S.W.2d 846, 849 (Tex.App.—Fort Worth 1982, no writ); *Ginther v. Taub,* 675 S.W.2d 724, 726 (Tex.1984). Under Texas law, such a trust may be imposed when one obtains property by fraudulent means, when an absolute conveyance of property was performed but not intended, or when a party breaches a fiduciary-like relationship. *Thigpen v. Locke,* 363 S.W.2d 247, 250–52 (Tex.1962); *Welder v. Welder,* 794 S.W.2d 420, 434 (Tex.App.—Corpus Christi 1990, no writ). Agency is a fiduciary relationship. *West v. Touchstone,* 620 S.W.2d 687, 690 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Gardner Mach. Corp. v. U.C. Leasing, Inc.,* 561 S.W.2d 897, 900 (Tex.Civ.App.—Beaumont 1978, writ dism'd). Thus, an agent who misapplies the funds of his principal is constructively a trustee for the principal. *Gardner,* 561 S.W.2d at 900; *Berry v. Rhine,* 205 S.W.2d 632 (Tex.Civ.App.—Fort Worth 1947, no writ).

■ KVIA and KINT assert that they are entitled to a constructive trust on the proceeds that Paxson received from the advertisers because Paxson was an agent of the advertisers. This argument is without merit. The bankruptcy court did not

---

1. The Bankruptcy Court did amend its judgment to tax costs against all parties, rather than against TCB alone. In all other respects, the court denied TCB's motion.

find that Paxson was an agent of the advertisers, and we are not entitled to do so on appeal. In any event, there seems to be no authority for the proposition that *a third party* is entitled to a constructive trust when an agent breaches duties owed to its principal. Where an agent misappropriates monies of its principal, the third party's cause of action is against the principal, not the agent. *See Wells Fargo Business Credit v. Ben Kozloff, Inc.*, 695 F.2d 940, 944 (5th Cir.1983); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 272 (5th Cir.1980). The right to a constructive trust for breach of agency lies solely with the principal. *Berry*, 205 S.W.2d at 634 ("[a]n agent who misapplies his principal's money is constructively a trustee *for the principal* as to any property purchased with such money") (emphasis added). Thus, even if an agency relationship existed between Paxson and the advertisers, KVIA and KINT are not entitled to a constructive trust on this ground.

 Alternatively, KVIA and KINT claim that they are entitled to a constructive trust because Paxson was their agent.[2] The essential element of an agency relationship is the right of control. *Wynne v. Adcock Pipe & Supply*, 761 S.W.2d 67, 69 (Tex.App.—San Antonio 1988, writ denied); *Carr v. Hunt*, 651 S.W.2d 875, 879 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). The alleged principal must have the right to control both the means and the details of the process by which the alleged agent is to accomplish his task. *Xarin Real Estate, Inc. v. Gamboa*, 715 S.W.2d 80, 84 (Tex. App.—Corpus Christi 1986, writ ref'd n.r. e.); *Johnson v. Owens*, 629 S.W.2d 873, 875 (Tex.App.—Fort Worth 1982, writ ref'd n.r. e.). Absent proof of the right to control, only an independent contractor relationship is established. *See First Nat'l Bank of Fort Worth v. Bullock*, 584 S.W.2d 548, 551–52 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.); *In re Cooper*, 2 B.R. 188, 193 (Bankr. S.D.Tex.1980).

In this case, the bankruptcy court found that Paxson acted as agent for KVIA and KINT in collecting the money owed by the advertisers. The court based its perfunctory conclusion almost solely upon the language of the Broadcast Order prepared by Paxson and signed by the Stations, which provided as follows:

> The Advertiser having accepted full liability, [the Advertising] Agency is hereby relieved of personal liability for the broadcast time ordered under the Advertiser's authorization in consideration of which the Agency shall, however, exercise the same diligence and good faith in collecting and forwarding moneys due the vendor as though it were personally liable.

We are convinced that whatever this proviso intended as an expression of good faith and limitation of liability, it did not render Paxson an agent of KVIA or KINT. It is the facts and circumstances of the case, not just the words of the parties' agreement, that establishes an agency relationship. *See Newspapers, Inc. v. Love*, 380 S.W.2d 582, 591–92 (Tex.1964); *Chien v. Chen*, 759 S.W.2d 484, 497 (Tex.App.—Austin 1988, no writ). In this case, Mike Paxson testified at trial that despite the provisions in the Broadcast Orders, when advertisers refused to pay for air-time, KVIA sought payment from the agency, not the advertisers. Moreover, representatives of KVIA and KINT testified that they believed Paxson was solely responsible for payment of air-time. These facts undermine KVIA and KINT's claims that Paxson was their agent.

More importantly, nothing in the Broadcast Orders confers upon KVIA or KINT the right to control Paxson, and the course of dealing between the parties illustrates that no control was ever asserted or exercised. This case is analogous to *In re Cooper*, 2 B.R. 188 (Bankr.S.D.Tex.1980). There a concert promoter contracted with independent ticket distributors for the off-site sale of concert tickets. The promoter had no direct control over the day-to-day operations of the distributors or over the method by which the tickets would be sold.

---

**2.** Under Texas law, agency is a mixed question of law and fact. *American International Trading Corp. v. Petroles Mexicanos*, 835 F.2d 536, 539 (5th Cir.1987). To the extent that the facts are undisputed, the trial court's ruling is freely reviewable on appeal. However, where, as here, the facts are disputed, the clearly erroneous standard applies. *See id.*

As a result, the bankruptcy court held that the relationship between the distributors and the promoter was one of independent contractor[3] and employer rather than principal and agent. *Id.* at 193.

Here, KVIA and KINT allege that Paxson was acting as their "agent for collection purposes," and the bankruptcy court so found. However, as in *In re Cooper,* KVIA and KINT had no control over the method by which collection was accomplished. The Stations were interested only in payment for air time, not in how Paxson collected its accounts. As the General Manager for KVIA testified:

Q. Did KVIA ever tell Carolin Paxson Advertising, relative to unpaid or late-paid invoices ... that they needed to go out and sue people or they needed to send demand letters or they needed to take any specific steps in order to collect on those receivables? ....

A. Not to my knowledge.

Mike Paxson offered similar testimony:

Q. Did KVIA or KINT ever contact you or anyone else at the business to your knowledge, to tell you that specific accounts needed to be collected or that you needed to do specific things to collect those receivables?

A. They said, "we need to get paid on them." They didn't tell me anything about how to collect them.

This testimony firmly establishes that there was no agency relationship between Paxson and the television stations. Equally important, the "agency" for collection purposes cannot be divorced from the broader context of Paxson's business for both the stations and the advertisers. Paxson purchased air time for resale, sometimes for a particular advertiser, at other times in contemplation of securing advertising clients. Paxson then selected the medium and ad to be used by the advertisers, controlled the ultimate price charged to them, and typically remitted the money it received from the advertisers, less its commission, to the stations. Paxson thus served the interests of both the stations and the Advertisers. To characterize Paxson as an "agent" of either or both of these entities is a misnomer: Paxson was a professional intermediary that contracted with clients at both ends of the advertising business but was not controlled by and had no special obligation to either end. At best, Paxson was an independent contractor of the Stations. As such, KVIA and KINT are only entitled to file breach of contract claims against Paxson, which will be realized by proofs of claim in bankruptcy. Accordingly, we conclude that the bankruptcy court clearly erred in imposing a constructive trust on the proceeds owed to Paxson by the advertisers.

### III.

KVIA and KINT failed to meet their burden of establishing a constructive trust and have therefore not taken themselves out of conventional creditor status. Accordingly, the judgment of the district court affirming the bankruptcy court is REVERSED. The case is REMANDED for proceedings not inconsistent with this opinion.

---

**3.** *See Daily International Sales Corp. v. Eastman Whipstock, Inc.,* 662 S.W.2d 60, 64 (Tex.App.—Houston [1st Dist.] 1983, no writ) (distinguishing independent contractor relationships from principal/agent relationships).