Tetens v. Garcia 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00147-CV







Richard Frederick Tetens, Individually and as Independent Administrator


of the Estate of Ernst Tetens, Deceased, Appellant



v.



Ruthie Garcia, Appellee







FROM THE DISTRICT COURT OF McCULLOCH COUNTY, 198TH JUDICIAL

DISTRICT

NO. 127-94, HONORABLE EMIL KARL PROHL, JUDGE PRESIDING








 Appellant, Richard Frederick Tetens, challenges the trial court's declaratory judgment
awarding appellee, Ruthie Garcia, $36,958.48 in trust funds. In two points of error, Richard urges that the
trial court (1) improperly ruled that Ruthie was entitled to the funds and (2) erroneously concluded that
venue was proper in McCulloch County. Ruthie brings two cross-points of error asserting that the trial
court (1) abused its discretion by refusing to award her attorneys' fees and (2) erred by miscalculating her
prejudgment interest award. We will reform the trial court's judgment and, as reformed, affirm.



BACKGROUND


 In September of 1987, Ernst Tetens, Richard's father, opened a trust account at Southern
Savings and Loan Association in McCulloch County, Texas. The trust account was in the form of a
certificate of deposit in the initial amount of $17,000, yielding 9.6% interest. On the account signature card,
Ernst listed himself as both the grantor and trustee and named his granddaughter, Ruthie Garcia, beneficiary. 
Only Ernst and Ruthie's names appear on the account signature card.

 The account signature card establishes the terms of the trust account. According to those
terms, the account funds were held in a revocable trust under the Texas Trust Act. (1) As trustee, Ernst had
the power to manage and invest the trust funds; as grantor, he had the power to revoke the trust at any
time. To effectuate such a revocation, the grantor had to request in writing a withdrawal of the trust funds. 
Upon Ernst's death, the account funds were to be distributed to Ruthie as beneficiary.

 In March of 1990, Ernst executed a general power of attorney appointing his son (Ruthie's
uncle), Richard Frederick Tetens, his attorney-in-fact. This power of attorney gave Richard broad powers
including the authority to sign or endorse Ernst's checks and withdrawal receipts, to withdraw funds from
Ernst's bank accounts, to sell or make gifts of any of Ernst's property, and to continue gifts for the benefit
of Ernst's family members.

 By 1992, Ernst was in poor health and Richard was actively handling his affairs. When the
certificate of deposit matured in September of 1992, Richard notified the savings and loan in writing that
he was closing the trust account. (2) The bank tendered a check for $36,958.48, the current value of the
certificate, payable to Ernst Tetens, trustee for Ruthie Garcia. Richard deposited the funds into Ernst's
bank account and reinvested them in Ernst's name--no longer as trustee for Ruthie.

 Ernst Tetens died on November 26, 1993. When Ruthie discovered that Richard had
terminated the trust account, she filed suit against him seeking a declaratory judgment. She asked the trial
court to declare that Richard had no authority to close the trust account, and therefore, that the account
funds remained her property. Richard, on the other hand, argued that the power of attorney authorized him
to close the trust account. According to Richard's argument, by closing the account, he revoked the trust
and the funds belonged solely to Ernst Tetens. Thus, when Ernst died, the funds were part of Ernst's estate
and passed to Ernst's children under his will.

 The trial court held in Ruthie's favor. In doing so, it made several unchallenged findings of
fact, including findings that (1) Richard did not consult with or obtain Ernst's consent before terminating the
trust; (2) Richard was not a trustee of the trust account; (3) (3) Richard knew that terminating the trust account
would remove Ruthie as a beneficiary of the trust; (4) Richard knew that terminating the trust would make
the trust funds part of Ernst's estate of which Richard was a beneficiary; (5) although Richard placed the
trust funds into an account to earn a higher interest rate, Ernst had sufficient other assets without the trust
funds to live comfortably; and (6) Richard's termination of the trust was directly contrary to Ernst's intent
to establish a trust for the benefit of Ruthie.

 From these findings, the trial court concluded that equity should not permit Richard to use
the power of attorney to thwart Ernst's intent for Richard's benefit and Ruthie's detriment. Accordingly,
it held that the trust funds belonged to Ruthie. Richard now appeals the trial court's judgment.



DISCUSSION


 Richard contends that the trial court erred because, as a matter of law, the power of
attorney gave him the authority to revoke the trust and reinvest the trust funds and because Ruthie had no
right to the funds in the account. Ruthie admits that, under the terms of the trust account, Ernst had the
authority to revoke the trust at any time before his death; however, she argues that Richard, as Ernst's
attorney-in-fact, did not have the same authority. We conclude that, although the power of attorney gave
Richard the authority to revoke the trust, he misused that authority. Therefore, when Richard revoked the
trust, the account funds remained trust funds, and upon Ernst's death became Ruthie's property.

 To determine whether Richard had the power to revoke the trust, we look to the language
of the general power of attorney. We must construe that document as a whole to ascertain the parties'
intentions and rights, including the nature and extent of the authority Ernst granted Richard. First Nat'l
Bank in Dallas v. Kinabrew, 589 S.W.2d 137, 145 (Tex. Civ. App.--Tyler 1979, writ ref'd n.r.e.);
Gittings, Neiman-Marcus, Inc. v. Estes, 440 S.W.2d 90, 93 (Tex. Civ. App.--Eastland 1969, no writ).

 The terms of the general power of attorney must be strictly construed to limit an attorney-in-fact's authority. Gouldy v. Metcalf, 12 S.W. 830, 831 (Tex. 1889); Kinabrew, 589 S.W.2d at 145. 
This seven-page-long power of attorney conferred many powers on Richard. In its initial paragraph Ernst
gives Richard the authority "to purchase, sell, exchange, borrow, mortgage, and otherwise manage all of
[Ernst's] properties, real, personal, and mixed, and . . . to do and perform all and every act and thing
whatsoever requisite and necessary to be done in and about the premises, as fully . . . as [Ernst] might or
would do if personally present." Following this general grant of power, the document grants nineteen
specific powers including the authority to sign and endorse checks, to establish trusts, to deposit and
withdraw funds, and to continue gifts for the benefit of Ernst's family.

 Although the power of attorney gave Richard the power to withdraw the funds from the
account and thereby revoke the trust, (4) it did not empower him to alter those funds in a manner that would
remove Ruthie as beneficiary. The power of attorney specifically granted Richard the authority to continue
gifts. It did not, however, give him the authority to discontinue pre-existing gifts. Accordingly, when
Richard placed the funds in a new account and failed to designate Ruthie as Ernst's beneficiary, he
exceeded the grant of power contained in the general power of attorney.

 The appointment of an attorney-in-fact creates a fiduciary relationship. Sassen v.
Tanglegrove Townhouse Condominium Ass'n, 877 S.W.2d 489, 492 (Tex. App.--Texarkana 1994,
writ denied). As Ernst's fiduciary, Richard could not exceed the authority granted him and thereby act
contrary to Ernst's wishes. See Marlin v. Kelley, 678 S.W.2d 582, 588 (Tex. App.--Houston [14th
Dist.] 1984) (holding that an executor, as a fiduciary, was not empowered to act against the wishes of the
decedent), aff'd, 714 S.W.2d 303 (Tex. 1986).

 Richard acknowledges that, by virtue of the power of attorney, he owed Ernst a fiduciary
duty, but argues that he fulfilled that duty by terminating the trust account and purchasing higher yielding
investments with the account funds. However, the trial court found that "Ernst Tetens had sufficient other
assets without the trust funds to live comfortably" and that "Richard Frederick Tetens actions were directly
contrary to the intent of Ernst Tetens regarding the establishment of a trust account for the benefit of his
granddaughter." Because Richard did not challenge these findings, we are bound by them. See Atascosa
County Appraisal Dist. v. Tymrak, 815 S.W.2d 364, 367 (Tex. App.--San Antonio 1991), aff'd, 858
S.W.2d 335 (Tex. 1993); see also McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986)
(holding that courts of appeals are bound by unchallenged findings of fact unless there is no evidence to
support the findings).

 According to the language of the power of attorney and the trial court's findings of fact,
Ernst's intent with respect to the trust account was not to maximize its yield, but rather to continue the trust
for Ruthie's benefit. Thus, when Richard revoked the trust, he thwarted Ernst's intentions and breached
his fiduciary duty to Ernst. Because Richard's act in revoking the trust and not continuing the gift for
Ruthie's benefit exceeded his authority under the power of attorney and breached his fiduciary duty to
Ernst, we believe that the resulting account funds remained trust funds. Cf. In re Carolin Paxson
Advertising, Inc., 938 F.2d 595, 597 (5th Cir. 1991) (noting that a constructive trust may be imposed
when a party breaches a fiduciary relationship, and therefore, an agent who misapplies the funds of his
principal is constructively a trustee for the principal). Upon Ernst's death the funds became Ruthie's
property just as if they had remained in the original certificate of deposit. Accordingly, we hold that the trial
court did not err in concluding that the funds belonged to Ruthie and we overrule Richard's points of error.



Cross-Points

 In one of two crosspoints, Ruthie argues that the trial court abused its discretion by refusing
to award her attorneys' fees. In its declaratory judgment, the trial court could have awarded Ruthie
attorneys' fees, Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986); however, it was not obligated
to do so. "[T]he grant or denial of attorney's fees in a declaratory judgment action lies within the discretion
of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that
discretion." Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985). In reviewing the record, we find
no abuse of discretion and, therefore, overrule Ruthie's first cross-point of error.

 In her second cross-point, Ruthie contends that the trial court miscalculated the award of
prejudgment interest. In reviewing the court's judgment and findings of fact, we find that Ruthie is correct. 
The trial court found that Ruthie was entitled to prejudgment interest on $36,958.48 at the rate of six
percent per annum from the date of Ernst's death on November 26, 1993, until the date of the judgment
on November 13, 1995. The trial court's judgment, however, awarded Ruthie only $2,217.50--one year's
interest. Accordingly, we sustain Ruthie's second cross-point of error and reform the trial court's judgment
to award her prejudgment interest at the rate of six percent per annum from November 26, 1993, to
November 13, 1995.



CONCLUSION


 Having overruled Richard's points of error, we affirm the judgment of the trial court as
reformed.



 

 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Reformed and, as Reformed, Affirmed

Filed: November 13, 1996

Do Not Publish

1.   The Texas Trust Act is now considered a part of the Texas Trust Code. See Tex. Prop.
Code Ann. §§ 111.001, 111.002(b) (West 1995).
2.   At trial, Richard stated that his purpose for withdrawing the funds was to reinvest them
at a higher rate of interest. He testified that Ernst owned several certificates of deposit and
lived off the interest income. Richard claimed that this investment income was insufficient to
support Ernst; therefore, Richard sold all of Ernst's certificates of deposit as they matured to
reinvest them at a higher interest rate.
3.   In his second point of error, Richard argues that venue is improper in McCulloch
County. He asserts that venue is mandatory in the county of the trustee's residence in cases
construing a trust instrument, determining powers of a trustee, ascertaining beneficiaries, or
questions regarding the administration or distribution of trusts. See Tex. Prop. Code Ann.
§§ 115.001-.002 (West 1995). Therefore, he asserts that venue is mandatory in his home county,
Brazoria County. In an unchallenged finding, the trial court found that Richard was "not sued in a
trustee capacity nor did he ever purport to be a trustee." Therefore, his home county is irrelevant in
determining venue under § 115.002 of the Property Code. Moreover, this dispute does not fall within
any of the categories listed in § 115.001 of the Property Code; therefore, venue is not mandatory in the
county of the trustee's residence. See id. The trial court held that venue was proper in McCulloch
County because part of the conduct giving rise to Ruthie's cause of action occurred there. See Tex.
Civ. Prac. & Rem. Code Ann. § 15.001 (West 1986) (since renumbered as § 15.002 and amended by
Act of May 18, 1995, 74th Leg., R.S., ch. 138, § 1, 1995 Tex. Gen Laws 978, 979).
4.   The general power of attorney allowed Richard to act on Ernst's behalf as grantor. The
trial court found that Richard never purported to act as trustee of the trust. This finding is
unchallenged; therefore, we need not address whether Richard, under the power of attorney,
could act as trustee.


">Cross-Points

 In one of two crosspoints, Ruthie argues that the trial court abused its discretion by refusing
to award her attorneys' fees. In its declaratory judgment, the trial court could have awarded Ruthie
attorneys' fees, Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986); however, it was not obligated
to do so. "[T]he grant or denial of attorney's fees in a declaratory judgment action lies within the discretion
of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused that
discretion." Oake v. Collin County, 692 S.W.2d 454, 455 (Tex. 1985). In reviewing the record, we find
no abuse of discretion and, therefore, overrule Ruthie's first cross-point of error.

 In her second cross-point, Ruthie contends that the trial court miscalculated the award of
prejudgment interest. In reviewing the court's judgment and findings of fact, we find that Ruthie is correct. 
The trial court found that Ruthie was entitled to prejudgment interest on $36,958.48 at the rate of six
percent per annum from the date of Ernst's death on November 26, 1993, until the date of the judgment
on November 13, 1995. The trial court's judgment, however, awarded Ruthie only $2,217.50--one year's
interest. Accordingly, we sustain Ruthie's second cross-point of error and reform the trial court's judgment
to award her prejudgment interest at the rate of six percent per annum from November 26, 1993, to
November 13, 1995.



CONCLUSION


 Having overruled Richard's points of error, we affirm the judgment of the trial court as
reformed