**STATE of Texas, City of Houston, Texas, and Transit Authority of Houston, Texas, Appellants,**

v.

**David P. MINK, Appellee.**

**No. 03–98–00032–CV.**

Court of Appeals of Texas, Austin.

Feb. 11, 1999.

---

Brian D. MacLeod, Asst. Atty. Gen., Collections Division, Austin, for appellants.

Michael M. Probus, Jr., Austin, for appellee.

Before Justices KIDD, PATTERSON and POWERS.*

JAN PATTERSON, Justice.

The State of Texas, the City of Houston, Texas, and the Transit Authority of Houston, Texas (collectively "the State") sued David P. Mink, an officer and director of Pacific Waterbeds, Inc. ("the Corporation"), alleging that Mink received or collected sales taxes on behalf of the State and disbursed the money instead of rendering it to the State. Both parties moved for summary judgment. The trial court denied the State's motion for summary judgment and granted Mink's motion for summary judgment. The State challenges the trial court's judgment, arguing that section 111.016 of the Tax Code as it existed before 1995 imposes personal liability for delinquent sales taxes on individuals who control the financial affairs of a corporation and have the power to see that collected sales taxes are remitted. We will reverse the summary judgment granted to Mink and render judgment for the State.

## THE CONTROVERSY

Between May 1991 and February 1994 (the "liability period"), the Corporation made taxable sales of merchandise at several locations in Houston. The Corporation collected sales taxes from its vendees but failed to remit the collected taxes to the Comptroller of Public Accounts. Specifically, the Corporation failed to remit taxes, inclusive of penalties and interest, in the following amounts, as reflected in Comptroller's certificates submitted as part of the State's summary judgment proof: $180,207.55 in state sales taxes, $33,422.99 in municipal sales taxes, and $33,452.57 in Transit Authority sales taxes.[1] The tax receipts collected by the Corporation were deposited in the Corporation's bank account.

On March 11, 1996, the State filed suit against Mink seeking to recover the delinquent taxes pursuant to Act of July 21, 1987, 70th Leg., 2d C.S., ch. 1, § 1, 1987 Tex. Gen. Laws 1 (hereinafter "the trust fund provision") (amended 1995) (current version at Tex. Tax Code Ann. § 111.016 (West Supp.1999)), which states:

> Any person who receives or collects a tax or any money represented to be a tax from another person holds the amount so collected in trust for the benefit of the state and is liable to the state for the full amount collected plus any

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Mink argues that the Comptroller's certificates submitted pursuant to Tex. Tax Code Ann. § 111.013 are not sufficient to establish his individual liability for delinquent taxes in the absence of proof of the actual amount of tax money he received or collected. *See N.S. Sportswear, Inc. v. State*, 819 S.W.2d 230, 233

(Tex.App.—Austin 1991, no writ). While the record does not contain an agreed order stipulating the amount of tax liability, *see Dixon v. State*, 808 S.W.2d 721, 722 (Tex.App.—Austin 1991, writ dism'd w.o.j.), Mink did admit that "[t]he sales tax at issue in the lawsuit was actually collected by the Corporation from its vendees when sales were made to such vendees." Therefore, the amount of tax owed the State is not an issue.

accrued penalties and interest on the amount collected.

In its summary judgment motion, the State alleged that under the version of the trust fund provision in effect during the liability period, the phrase "any person" should be read to include the chief financial officer and decision-maker for the Corporation. The State proved that Mink was the president of the Corporation and Mink admitted that he made financial decisions for the Corporation. The State argued that two facts are essential to create liability for an individual under the trust fund provision: (1) the tax was actually collected and (2) the person sought to be held liable had the ability to remit the tax. In his response to the State's motion for summary judgment, Mink alleged that the State did not establish that he received or collected sales taxes in his individual capacity.

█ Mink filed a cross-motion for summary judgment arguing that, in the absence of proof that the tax funds were converted to Mink's personal use,[2] the trust fund provision only imposed liability on the corporate taxpayer[3] for the taxes collected but not remitted to the State. In this appeal, we must resolve only the issue of whether Mink may be held personally liable for the Corporation's unpaid taxes under the trust fund provision in effect for the liability period.

## DISCUSSION AND HOLDING

The facts in this case are generally not in dispute. The State's summary judgment evidence relating to Mink's liability for the unpaid taxes consisted of the State's certificates of tax delinquency and Mink's responses to the State's requests for admissions and interrogatories. For the liability period at issue, Mink admitted that he was the president of the Corporation; that he and his wife were the only directors of the Corporation; and that he was one of two signatories on the Corporation's bank account into which the sales taxes collected by the Corporation were deposited. Mink's control over the financial affairs of the Corporation is apparent from Mink's signature on various agreements in which Mink committed the Corporation to financial obligations, including: (1) his authorization of an advertising budget; (2) his authorization of a lease arrangement in which he bound the Corporation to pay rent; and (3) his execution of a promissory note obligating the Corporation to repay a loan of $100,000 with interest. Moreover, Mink admitted that he authorized the bankruptcy filing of the Corporation and selected the liquidators of the Corporation's inventory.

Furthermore, Mink admitted that he had actual knowledge that sales tax was being collected by the Corporation; that he consented to and approved the collection of sales tax by the Corporation; and that individuals employed by the Corporation and under his control deposited the sales tax at issue into the bank account of the Corporation. Mink acknowledged that he was one of the individuals who made the decision to pay or not to pay sales tax collected by the Corporation to the State.

While the parties generally agree on the facts, they differ on how the law should be applied. The State contends that because these facts establish that Mink was a per-

---

2. The State did not allege that Mink converted the funds to his own use. Otherwise this case is virtually identical to *Dixon*, 808 S.W.2d 721, discussed in detail *infra*.

3. Throughout this opinion, we refer to the party whose statutory duty it is to collect and remit the taxes at issue as the "taxpayer." While it is the consumer who actually pays the taxes, both the seller and the purchaser are considered taxpayers, since either may be

held liable for the unpaid taxes. *See Davis v. State*, 904 S.W.2d 946, 952 (Tex.App.—Austin 1995, no writ). Additionally, under Texas law, sales and use taxes are considered a tax on the transaction. *See Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App.—Austin 1990, writ denied) (citing *Calvert v. Canteen Co.*, 371 S.W.2d 556, 558 (Tex. 1963)).

son with authority over the finances of the Corporation, he should be held personally liable for the taxes that were collected but not remitted to the State. Mink contends that the phrase "any person" in the trust fund provision refers only to the taxpayer; therefore, liability for delinquent taxes should be imposed only on the Corporation. Mink argues that an officer of a corporate taxpayer can be held liable for the amount of delinquent tax collected by the corporation only when that officer commits the tort of conversion of tax funds.

Mink contends that his interpretation of the trust fund provision in effect during the liability period was validated by the 1995 amendment to Tax Code section 111.016.[4] Mink argues that the addition of subsections (b) through (d) expands liability for unpaid taxes to corporate officers and employees who were not liable under the law as it existed during the liability period.

In *Dixon v. State*, 808 S.W.2d 721 (Tex. App.—Austin 1991, writ dism'd w.o.j.), we confronted an almost identical fact pattern. The appellant, Dixon, was president and director of the corporate taxpayer and had actual knowledge that taxes had been collected and commingled with the corporation's operating account. Dixon, or those answerable to him, commingled the tax money with the corporation's operating account. Dixon was also the only person who could authorize checks to be written on the corporation's accounts, and he admitted that he had authorized payment of the tax receipts to entities other than the State. *Dixon*, 808 S.W.2d at 723. The State sued the corporation under two theories: common law conversion and statutory liability under the trust fund provision. The trial court granted the State's summary judgment motion, holding both the corporation and Dixon personally liable.

Limiting our holding to the specific facts of the case before us, we held in *Dixon* that Dixon had committed the common law tort of conversion "by instigating, aiding, or abetting [the corporate taxpayer] in spending the State's tax money for purposes other than the payment of taxes," and was therefore jointly and severally liable for the tax liability of the corporation. *Id.* at 724. We declined to rule on whether "Dixon as an individual was, in addition to the corporate taxpayer … a trustee of the State's tax money under § 111.016 of the Texas Tax Code." *Id.*

However, we recognized in *Dixon* that the trust fund provision imposes on the taxpayer a fiduciary duty to hold dollars that it receives or collects "in trust for the benefit of the state." *Id.* at 723 (quoting

---

4. The trust fund provision was amended effective September 1, 1995 to redesignate the existing statute as subsection (a) and to add the following provisions to the section:

(b) With respect to tax or other money subject to the provisions of Subsection (a), an individual who controls or supervises the collection of tax or money from another person, or an individual who controls or supervises the accounting for and paying over of the tax or money, and who wilfully fails to pay or cause to be paid the tax or money is liable as a responsible individual for an amount equal to the tax or money not paid or caused to be paid. The liability imposed by this subsection is in addition to any other penalty provided by law. The dissolution of a corporation, association, limited liability company, or partnership does not affect a responsible individual's liability under this subsection.

(c) The district courts of Travis County have exclusive, original jurisdiction of a suit arising under this section.

(d) In this section:

(1) "Responsible individual" includes an officer, manager, director, or employee of a corporation, association, or limited liability company or a member of a partnership who, as an officer, manager, director, employee, or member, is under a duty to perform an act with respect to the collection, accounting, or payment of a tax or money subject to the provisions of Subsection (a).

(2) "Tax" includes any tax or money subject to the provisions of Subsection (a), including the penalty and interest computed by reference to the amount of the tax or money.

Tex. Tax Code Ann. § 111.016 (West Supp. 1999).

Tex. Tax Code Ann. § 111.016 (West 1992)). We cited with approval cases holding a corporate officer liable for torts committed by the corporation through him, *id.* (citing *Gardner Mach. Corp. v. U.C. Leasing, Inc.,* 561 S.W.2d 897, 899 (Tex.Civ. App.—Beaumont 1978, writ dism'd); *McCollum v. Dollar,* 213 S.W. 259, 261 (Tex. Comm'n App.1919, holding approved)), and cases holding a corporate officer individually liable for commingling and converting the trust funds of another, thereby causing the corporation to breach its fiduciary duty owed as an agent to its principal. *Id.* (citing *Gardner,* 561 S.W.2d at 900; *Searle–Taylor Mach. Co., Inc. v. Brown Oil Tools, Inc.,* 512 S.W.2d 335, 338 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.)). Thus, while it is the corporation, as taxpayer, that owes the State a fiduciary duty to hold the tax receipts in trust, we held that an officer of the corporation could be held individually liable based upon *his own tortious conduct. Id.* at 724.

Neither party disputes the following: Mink was an officer and director of the Corporation; Mink had actual knowledge that sales tax was being collected by the Corporation on behalf of the State during the liability period; Mink consented to and approved the collection of sales tax by the Corporation during the liability period; Mink, or those under his control, deposited the tax money into the Corporation's bank account; Mink was one of two individuals authorized to sign checks on the Corporation's bank account; and the Corporation failed and refused to pay the full amount due to the State. Furthermore, in his affidavit Mink stated,

> Through its operations, the corporation incurred state tax liabilities, including sales tax. As operations of the corporation declined and cash flow slowed tight, Pacific Waterbeds, Inc. grew delinquent in some of its tax obligations. However, *all corporate funds were used for the legitimate expenses of operation;* no funds were diverted to my personal purposes. (Emphasis added).

While Mink denied, in his response to the State's requests for admissions, that sales tax receipts collected by the Corporation for the liability period were paid out of the Corporation's bank account to entities other than the Comptroller of Public Accounts, it is clear from his affidavit and the admitted facts that the Corporation collected, but did not remit, funds it held in trust for the benefit of the State. It is also clear that the Corporation, through its agents, moved funds it held in trust for the benefit of the State from its operating account to entities other than the State, resulting in a tax delinquency.

The parties concede the term "person" as used in the trust fund provision includes the corporate taxpayer. We need not read the term any more broadly to resolve this case. Section 111.016 of the Tax Code as it existed during the liability period states that money received or collected as a tax or represented to be a tax is held by the collecting party "in trust for the benefit of the state" and that the collecting party "is liable to the state for the full amount collected."

■ Because the Corporation collected sales taxes on behalf of the State, the Corporation owed a fiduciary duty to the State to hold the tax receipts it collected. *Dixon,* 808 S.W.2d at 723; *see also Stoker Management, Inc. v. Sharp,* 958 S.W.2d 286, 289 (Tex.App.—Austin 1997, pet. denied). However, a corporation is a "person" only in a legal sense. The corporation must act through its agents. If the corporation breaches its fiduciary duty, it does so because of the conduct of an agent of the corporation.

■ Mink's admitted conduct caused the corporation to breach its fiduciary duty owed as an agent to its principal, the State. *See Davis v. State,* 904 S.W.2d 946, 953 (Tex.App.—Austin 1995, no writ). Mink's conduct as the Corporation's agent renders him individually liable. It is im-

material that Mink did not convert the tax receipts to his own personal use; his actions as a corporate officer and agent resulted in the Corporation breaching its fiduciary duty to remit money it held in trust for the benefit of the State. *See Dixon,* 808 S.W.2d at 723.

We emphasize that Mink's liability under the trust fund provision arises from his conduct and control, not from his status as a corporate officer and director. We decline to reach the question of whether a corporate officer or director can be held individually liable, under the law in effect during the liability period, solely on the basis of such status. We reverse the trial court's judgment that Mink is not individually liable for the delinquent taxes and render judgment for the State in the following amounts, inclusive of penalties and interest: $180,207.55 in state sales taxes, $33,422.99 in municipal sales taxes, and $33,452.57 in Transit Authority sales taxes.