TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00032-CV







State of Texas, City of Houston, Texas, and Transit Authority of


Houston, Texas, Appellants



v.



David P. Mink, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 94-07044, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING








 The State of Texas, the City of Houston, Texas, and the Transit Authority of
Houston, Texas (collectively "the State") sued David P. Mink, an officer and director of Pacific
Waterbeds, Inc. ("the Corporation"), alleging that Mink received or collected sales taxes on behalf
of the State and disbursed the money instead of rendering it to the State. Both parties moved for
summary judgment. The trial court denied the State's motion for summary judgment and granted
Mink's motion for summary judgment. The State challenges the trial court's judgment, arguing
that section 111.016 of the Tax Code as it existed before 1995 imposes personal liability for
delinquent sales taxes on individuals who control the financial affairs of a corporation and have
the power to see that collected sales taxes are remitted. We will reverse the summary judgment
granted to Mink and render judgment for the State. 


THE CONTROVERSY

 Between May 1991 and February 1994 (the "liability period"), the Corporation
made taxable sales of merchandise at several locations in Houston. The Corporation collected
sales taxes from its vendees but failed to remit the collected taxes to the Comptroller of Public
Accounts. Specifically, the Corporation failed to remit taxes, inclusive of penalties and interest,
in the following amounts, as reflected in Comptroller's certificates submitted as part of the State's
summary judgment proof: $180,207.55 in state sales taxes, $33,422.99 in municipal sales taxes,
and $33,452.57 in Transit Authority sales taxes. (1) The tax receipts collected by the Corporation
were deposited in the Corporation's bank account.

 On March 11, 1996, the State filed suit against Mink seeking to recover the
delinquent taxes pursuant to Act of July 21, 1987, 70th Leg., 2d C.S., ch. 1, § 1, 1987 Tex. Gen.
Laws 1 (hereinafter "the trust fund provision") (amended 1995) (current version at Tex. Tax Code
Ann. §111.016 (West Supp. 1999)), which states:


Any person who receives or collects a tax or any money represented to be a tax
from another person holds the amount so collected in trust for the benefit of the
state and is liable to the state for the full amount collected plus any accrued
penalties and interest on the amount collected. 


 In its summary judgment motion, the State alleged that under the version of the trust
fund provision in effect during the liability period, the phrase "any person" should be read to
include the chief financial officer and decision-maker for the Corporation. The State proved that
Mink was the president of the Corporation and Mink admitted that he made financial decisions for
the Corporation. The State argued that two facts are essential to create liability for an individual
under the trust fund provision: (1) the tax was actually collected and (2) the person sought to be
held liable had the ability to remit the tax. In his response to the State's motion for summary
judgment, Mink alleged that the State did not establish that he received or collected sales taxes in
his individual capacity. 

 Mink filed a cross-motion for summary judgment arguing that, in the absence of
proof that the tax funds were converted to Mink's personal use, (2) the trust fund provision only
imposed liability on the corporate taxpayer (3) for the taxes collected but not remitted to the State. 
In this appeal, we must resolve only the issue of whether Mink may be held personally liable for
the Corporation's unpaid taxes under the trust fund provision in effect for the liability period. 


DISCUSSION AND HOLDING

 The facts in this case are generally not in dispute. The State's summary judgment
evidence relating to Mink's liability for the unpaid taxes consisted of the State's certificates of tax
delinquency and Mink's responses to the State's requests for admissions and interrogatories. For
the liability period at issue, Mink admitted that he was the president of the Corporation; that he
and his wife were the only directors of the Corporation; and that he was one of two signatories
on the Corporation's bank account into which the sales taxes collected by the Corporation were
deposited. Mink's control over the financial affairs of the Corporation is apparent from Mink's
signature on various agreements in which Mink committed the Corporation to financial
obligations, including: (1) his authorization of an advertising budget; (2) his authorization of a
lease arrangement in which he bound the Corporation to pay rent; and (3) his execution of a
promissory note obligating the Corporation to repay a loan of $100,000 with interest. Moreover,
Mink admitted that he authorized the bankruptcy filing of the Corporation and selected the
liquidators of the Corporation's inventory. 

 Furthermore, Mink admitted that he had actual knowledge that sales tax was being
collected by the Corporation; that he consented to and approved the collection of sales tax by the
Corporation; and that individuals employed by the Corporation and under his control deposited
the sales tax at issue into the bank account of the Corporation. Mink acknowledged that he was
one of the individuals who made the decision to pay or not to pay sales tax collected by the
Corporation to the State.

 While the parties generally agree on the facts, they differ on how the law should
be applied. The State contends that because these facts establish that Mink was a person with
authority over the finances of the Corporation, he should be held personally liable for the taxes
that were collected but not remitted to the State. Mink contends that the phrase "any person" in
the trust fund provision refers only to the taxpayer; therefore, liability for delinquent taxes should
be imposed only on the Corporation. Mink argues that an officer of a corporate taxpayer can be
held liable for the amount of delinquent tax collected by the corporation only when that officer
commits the tort of conversion of tax funds. 

 Mink contends that his interpretation of the trust fund provision in effect during the
liability period was validated by the 1995 amendment to Tax Code section 111.016. (4) Mink argues
that the addition of subsections (b) through (d) expands liability for unpaid taxes to corporate
officers and employees who were not liable under the law as it existed during the liability period.

 In Dixon v. State, 808 S.W.2d 721 (Tex. App.--Austin 1991, writ dism'd w.o.j.),
we confronted an almost identical fact pattern. The appellant, Dixon, was president and director
of the corporate taxpayer and had actual knowledge that taxes had been collected and commingled
with the corporation's operating account. Dixon, or those answerable to him, commingled the tax
money with the corporation's operating account. Dixon was also the only person who could
authorize checks to be written on the corporation's accounts, and he admitted that he had
authorized payment of the tax receipts to entities other than the State. Dixon, 808 S.W.2d at 723. 
The State sued the corporation under two theories: common law conversion and statutory liability
under the trust fund provision. The trial court granted the State's summary judgment motion,
holding both the corporation and Dixon personally liable.


 Limiting our holding to the specific facts of the case before us, we held in Dixon
that Dixon had committed the common law tort of conversion "by instigating, aiding, or abetting
[the corporate taxpayer] in spending the State's tax money for purposes other than the payment
of taxes," and was therefore jointly and severally liable for the tax liability of the corporation. 
Id. at 724. We declined to rule on whether "Dixon as an individual was, in addition to the
corporate taxpayer . . . a trustee of the State's tax money under § 111.016 of the Texas Tax
Code." Id.

 However, we recognized in Dixon that the trust fund provision imposes on the
taxpayer a fiduciary duty to hold dollars that it receives or collects "in trust for the benefit of the
state." Id. at 723 (quoting Tex. Tax Code Ann. § 111.016 (West 1992)). We cited with approval
cases holding a corporate officer liable for torts committed by the corporation through him, id.
(citing Gardner Mach. Corp. v. U.C. Leasing, Inc., 561 S.W.2d 897, 899 (Tex. Civ.
App.--Beaumont 1978, writ dism'd); McCollum v. Dollar, 213 S.W. 259, 261 (Tex. Comm'n
App. 1919, holding approved)), and cases holding a corporate officer individually liable for
commingling and converting the trust funds of another, thereby causing the corporation to breach
its fiduciary duty owed as an agent to its principal. Id. (citing Gardner, 561 S.W.2d at 900;
Searle-Taylor Mach. Co., Inc. v. Brown Oil Tools, Inc., 512 S.W.2d 335, 338 (Tex. Civ. App.--
Houston [1st Dist.] 1974, writ ref'd n.r.e.)). Thus, while it is the corporation, as taxpayer, that
owes the State a fiduciary duty to hold the tax receipts in trust, we held that an officer of the
corporation could be held individually liable based upon his own tortious conduct. Id. at 724.


 Neither party disputes the following: Mink was an officer and director of the
Corporation; Mink had actual knowledge that sales tax was being collected by the Corporation on
behalf of the State during the liability period; Mink consented to and approved the collection of
sales tax by the Corporation during the liability period; Mink, or those under his control,
deposited the tax money into the Corporation's bank account; Mink was one of two individuals
authorized to sign checks on the Corporation's bank account; and the Corporation failed and
refused to pay the full amount due to the State. Furthermore, in his affidavit Mink stated, 


Through its operations, the corporation incurred state tax liabilities, including sales
tax. As operations of the corporation declined and cash flow slowed tight, Pacific
Waterbeds, Inc. grew delinquent in some of its tax obligations. However, all
corporate funds were used for the legitimate expenses of operation; no funds were
diverted to my personal purposes. (Emphasis added).



 While Mink denied, in his response to the State's requests for admissions, that sales
tax receipts collected by the Corporation for the liability period were paid out of the Corporation's
bank account to entities other than the Comptroller of Public Accounts, it is clear from his
affidavit and the admitted facts that the Corporation collected, but did not remit, funds it held in
trust for the benefit of the State. It is also clear that the Corporation, through its agents, moved
funds it held in trust for the benefit of the State from its operating account to entities other than
the State, resulting in a tax delinquency. 

 The parties concede the term "person" as used in the trust fund provision includes
the corporate taxpayer. We need not read the term any more broadly to resolve this case. Section
111.016 of the Tax Code as it existed during the liability period states that money received or
collected as a tax or represented to be a tax is held by the collecting party "in trust for the benefit
of the state" and that the collecting party "is liable to the state for the full amount collected."

 Because the Corporation collected sales taxes on behalf of the State, the Corporation
owed a fiduciary duty to the State to hold the tax receipts it collected. Dixon, 808 S.W.2d at 723;
see also Stoker Management, Inc. v. Sharp, 958 S.W.2d 286, 289 (Tex. App.--Austin 1997, pet.
denied). However, a corporation is a "person" only in a legal sense. The corporation must act
through its agents. If the corporation breaches its fiduciary duty, it does so because of the conduct
of an agent of the corporation. 

 Mink's admitted conduct caused the corporation to breach its fiduciary duty owed
as an agent to its principal, the State. See Davis v. State, 904 S.W.2d 946, 953 (Tex.
App.--Austin 1995, no writ). Mink's conduct as the Corporation's agent renders him individually
liable. It is immaterial that Mink did not convert the tax receipts to his own personal use; his
actions as a corporate officer and agent resulted in the Corporation breaching its fiduciary duty
to remit money it held in trust for the benefit of the State. See Dixon, 808 S.W.2d at 723.

 We emphasize that Mink's liability under the trust fund provision arises from his
conduct and control, not from his status as a corporate officer and director. We decline to reach
the question of whether a corporate officer or director can be held individually liable, under the
law in effect during the liability period, solely on the basis of such status. We reverse the trial
court's judgment that Mink is not individually liable for the delinquent taxes and render judgment
for the State in the following amounts, inclusive of penalties and interest: $180,207.55 in state
sales taxes, $33,422.99 in municipal sales taxes, and $33,452.57 in Transit Authority sales taxes. 



 

 Jan Patterson, Justice

Before Justices Kidd, Patterson and Powers*

Reversed and Rendered

Filed: February 11, 1999

Publish

















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Mink argues that the Comptroller's certificates submitted pursuant to Tex. Tax Code Ann.
§ 111.013 are not sufficient to establish his individual liability for delinquent taxes in the absence
of proof of the actual amount of tax money he received or collected. See N.S. Sportswear, Inc.
v. State, 819 S.W.2d 230, 233 (Tex. App.--Austin 1991, no writ). While the record does not
contain an agreed order stipulating the amount of tax liability, see Dixon v. State, 808 S.W.2d
721, 722 (Tex. App.--Austin 1991, writ dism'd w.o.j.), Mink did admit that "[t]he sales tax at
issue in the lawsuit was actually collected by the Corporation from its vendees when sales were
made to such vendees." Therefore, the amount of tax owed the State is not an issue. 
2. The State did not allege that Mink converted the funds to his own use. Otherwise this case
is virtually identical to Dixon, 808 S.W.2d 721, discussed in detail infra. 
3. Throughout this opinion, we refer to the party whose statutory duty it is to collect and remit
the taxes at issue as the "taxpayer." While it is the consumer who actually pays the taxes, both
the seller and the purchaser are considered taxpayers, since either may be held liable for the
unpaid taxes. See Davis v. State, 904 S.W.2d 946, 952 (Tex. App.--Austin 1995, no writ). 
Additionally, under Texas law, sales and use taxes are considered a tax on the transaction. See
Bullock v. Foley Bros. Dry Goods Corp., 802 S.W.2d 835, 838 (Tex. App.--Austin 1990, writ
denied) (citing Calvert v. Canteen Co., 371 S.W.2d 556, 558 (Tex. 1963)).
4. The trust fund provision was amended effective September 1, 1995 to redesignate the
existing statute as subsection (a) and to add the following provisions to the section:


 (b) With respect to tax or other money subject to the provisions of Subsection
(a), an individual who controls or supervises the collection of tax or money from
another person, or an individual who controls or supervises the accounting for and
paying over of the tax or money, and who wilfully fails to pay or cause to be paid
the tax or money is liable as a responsible individual for an amount equal to the tax
or money not paid or caused to be paid. The liability imposed by this subsection is
in addition to any other penalty provided by law. The dissolution of a corporation,
association, limited liability company, or partnership does not affect a responsible
individual's liability under this subsection.

 (c) The district courts of Travis County have exclusive, original jurisdiction
of a suit arising under this section.

 (d) In this section:

 (1) "Responsible individual" includes an officer, manager, director, or
employee of a corporation, association, or limited liability company or a member
of a partnership who, as an officer, manager, director, employee, or member, is
under a duty to perform an act with respect to the collection, accounting, or payment
of a tax or money subject to the provisions of Subsection (a).

 (2) "Tax" includes any tax or money subject to the provisions of Subsection (a),
including the penalty and interest computed by reference to the amount of the tax or money.



Tex. Tax Code Ann. § 111.016 (West Supp. 1999).


 February 11, 1999

Publish

















* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Mink argues that the Comptroller's certificates submitted pursuant to Tex. Tax Code Ann.
§ 111.013 are not sufficient to establish his individual liability for delinquent taxes in the absence
of proof of the actual amount of tax money he received or collected. See N.S. Sportswear, Inc.
v. State, 819 S.W.2d 230, 233 (Tex. App.--Austin 1991, no writ). While the record does not
contain an agreed order stipulating the amount of tax liability, see Dixon v. State, 808 S.W.2d
721, 722 (Tex. App.--Austin 1991, writ dism'd w.o.j.), Mink did admit that "[t]he sales tax at
issue in the lawsuit was actually collected by the Corporation from its vendees when sales were
made to such vendees." Therefore, the amount of tax owed the State is not an issue. 
2. The State did not allege that Mink converted the funds to his own use. Otherwise this case
is virtually identical to Dixon, 808 S.W.2d 721, discussed in detail infra. 
3. Throughout this opinion, we refer to the party whose statutory duty it is to collect and remit
the taxes at issue as the "taxpayer." While it is t