CHARLES E. BEARD, INC., d/b/a Security Microfilm Co., Plaintiff–Appellant,

v.

McDONNELL DOUGLAS CORP., Defendant–Appellee.

No. 90–4331.

United States Court of Appeals, Fifth Circuit.

Aug. 20, 1991.

Rehearing Denied Sept. 17, 1991.

---

Denise Hubbard, Jon B. Burmeister, Moore, Landrey, Garth & Jones, Beaumont, Tex., for plaintiff-appellant.

Andrea M. Johnson, Gerald T. Holtzman, Tom Bayko, Holtzman & Urquhart, Houston, Tex., for defendant-appellee.

Before JONES and DUHÉ, Circuit Judges, and WALTER,[1] District Judge.

DUHÉ, Circuit Judge.

In this diversity action, Charles E. Beard, a distributor of micrographics equipment, sued McDonnell Douglas for deceptive trade practices, breach of contract, and negligence. At the close of the evidence in a jury trial, the district court directed a verdict for McDonnell Douglas. We affirm.

## FACTS

In December 1985 Beard entered into a distributorship agreement with Cameronics, an Australian company. Under the agreement, Beard bought a $50,000 specialized micrographics camera from Cameronics. But the relationship between Beard and Cameronics soon disintegrated. Beard accused Cameronics of failing to provide what he considered a necessary accoutrement to the camera—an automatic processing unit, or autoprocessor. Cameronics accused Beard of failing to make sufficient efforts to sell the camera.

In 1987 Beard sued Cameronics and McDonnell Douglas. During the early stages of litigation, Cameronics filed for receivership in Australia. Beard settled with that defendant but proceeded in the suit against McDonnell Douglas.

The central focus of the trial was the role of McDonnell Douglas in the contract negotiations between Beard and Cameronics. McDonnell Douglas had an informal trade agreement with the Australian government: Australia would buy defense products from McDonnell Douglas in exchange for the company's promise to provide unspecified marketing assistance to Australian companies such as Cameronics. The purpose of this assistance was to balance or offset trade between the two countries.

A McDonnell Douglas employee named Greg Smith called Beard to discuss the camera and introduced Beard to representatives of Cameronics. The record reveals

1. District Judge of the Western District of Louisiana, sitting by designation.

that before Beard agreed to the distributorship, Smith offered to provide customer leads and to help solve any problems that arose with the camera. Beard alleges in his brief that in connection with the sale of the camera, Smith also agreed to provide the autoprocessor if Cameronics did not. The record, however, does not support this assertion. Beard claims that he relied on these representations in buying the $50,000 camera, in converting his business, and in retraining his staff.

Beard sued McDonnell Douglas for violation of the Texas Deceptive Trade Practices Act (DTPA),[2] breach of contract, and negligence. At the close of the evidence, the court directed a verdict for McDonnell Douglas on all three of these claims.

## DISCUSSION

### Standard of Review

■ We review *de novo* the district court's award of a directed verdict for McDonnell Douglas. *See Lloyd v. John Deere Co.*, 922 F.2d 1192, 1194 (5th Cir. 1991); *Melton v. Deere & Co.*, 887 F.2d 1241, 1244 (5th Cir.1989). In ruling on a motion for directed verdict, a court must examine the entire record in the light most favorable to the party opposing the motion, drawing all inferences in favor of that party. *See Treadaway v. Societe Anonyme Louis–Dreyfus*, 894 F.2d 161, 164 (5th Cir. 1990); *Love v. King*, 784 F.2d 708, 710 (5th Cir.1986); *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc).

■ A directed verdict is appropriate if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that no reasonable jury could arrive at a contrary conclusion. *See Treadaway*, 894 F.2d at 164; *Love*, 784 F.2d at 710; *Shipman*, 411 F.2d at 374. A mere scintilla of evidence is insufficient to present a question for the jury. *See Love*, 784 at 710; *Shipman*, 411 F.2d at 374–75.

### DTPA Claim

The district court held that Beard's failure to provide the required notice under the Texas DTPA was fatal to the lawsuit. Despite this ruling on notice, the district court also held on the merits that "the DTPA does not attach derivative liability to a defendant based on an innocent involvement in a business transaction." *Charles E. Beard, Inc. v. Cameronics Technology Corp.*, 729 F.Supp. 528, 532 (E.D.Tex.1989).

Finally, the district court explained that it had directed a verdict for McDonnell Douglas on the DTPA claim because Beard had failed to produce evidence that any action by the company was a producing cause of his damages. *See id.* To be entitled to reversal of the directed verdict on the DTPA claim, Beard must prove that the court erred in all three of these rulings.

■ We conclude that regardless of the first two reasons, the third reason given by the district court adequately supports the directed verdict. The court explained that Beard "presented no evidence that defendant was a producing cause of any of plaintiff's alleged damages." *Cameronics Technology Corp.*, 729 F.Supp. at 532. After carefully reviewing the record, we agree that Beard failed to produce enough evidence on this essential element of causation to avoid a directed verdict on his DTPA claim.

Beard did testify that he would not have bought the camera except for the representations that McDonnell Douglas would solve any problems that arose with the camera. But this broad self-serving declaration is a mere scintilla compared to Beard's sweeping admissions on cross-examination that before the contract was signed, McDonnell Douglas did not participate in the negotiations, did not guarantee the performance of Cameronics, did not promise to provide an automatic processor, and did not guarantee any sales.

At most, McDonnell Douglas employees gave Beard vague assurances that if anything went wrong, the company would help. If Beard relied on these statements to protect himself from loss in the transaction with Cameronics, then his reliance

2. *See* Tex.Bus. & Com.Code Ann. § 17.46 *et seq.*

was, as a matter of law, unreasonable. As a sophisticated businessman, Beard must have known that without a written contract, promise, or guarantee, McDonnell Douglas could not later be held liable for damages caused by Cameronics.

Because we conclude that a directed verdict was necessary based on Beard's lack of evidence on causation, we need not consider the district court's two alternative grounds for directing a verdict on the DTPA claim. *See South Texas Nat. Bank of Laredo v. United States Fire Ins. Co.,* 640 F.Supp. 278, 279–81 (S.D.Tex.1985).

*Contract Claim*

■ The district court directed a verdict on the contract claim for three reasons. First, "[t]he claimed promises and assurances made by the defendant to the plaintiff, if any, were made *after* Beard entered into the exclusive Cameronics distributorship agreement." *Cameronics Technology Corp.,* 729 F.Supp. at 530. Second, the contract, as an oral promise to answer for the default of another, was unenforceable under the statute of frauds. Finally, Beard produced no evidence that McDonnell Douglas employees were acting with the express or implied authority of the company.

Viewing the record in the light most favorable to Beard, we agree that the record reveals no specific promises or assurances made by McDonnell Douglas before Beard entered into the distributorship agreement in December 1985. As we discussed in relation to the DTPA claim, the record shows that McDonnell Douglas did not participate in the negotiations, did not guarantee the performance of Cameronics, did not promise to provide an automatic processor, and did not guarantee any sales.

At most, the record supports the inference that McDonnell Douglas employees offered to help facilitate communications between the companies and to help solve any problems that arose. These offers are simply not specific enough to form the basis for a breach-of-contract claim. *See Bank of El Paso v. T.O. Stanley Boot Co.,* 809 S.W.2d 279 (Tex.Ct.App.1991); *Wiley v. Bertelsen,* 770 S.W.2d 878, 882 (Tex.Ct.

App.1989). Even viewed in the light most favorable to Beard, the record lacks evidence that an enforceable contract existed between Beard and McDonnell Douglas. We find it unnecessary, therefore, to consider the other two grounds for the district court's decision to direct a verdict for McDonnell Douglas on the contract claim.

*Negligence Claim*

The district court directed a verdict for McDonnell Douglas on the negligence claim because Beard failed to produce evidence that McDonnell Douglas owed any duty to Beard. *Cameronics Technology Corp.,* 729 F.Supp. at 533. Whether the defendant owes a duty to the plaintiff is a threshold question in any negligence action. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987); *Diversified, Inc. v. Gibraltar Savs. Ass'n,* 762 S.W.2d 620, 622 (Tex.Ct.App.1988).

Beard argues that once McDonnell Douglas voluntarily acted to assist Beard, the company had a duty to use reasonable care to ensure that no damages would result from its actions. Beard's theory of recovery is based on the rule that "one who voluntarily undertakes an affirmative course of action for the benefit of another has a duty to exercise reasonable care that the other's person or property will not be injured thereby." *Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 119 (Tex.1976); *see Osuna v. Southern Pac. R.R.,* 641 S.W.2d 229, 230 (Tex.1982); *Diaz v. Southwest Wheel, Inc.,* 736 S.W.2d 770, 772–73 (Tex. Ct.App.1987).

The Restatement (Second) of Torts explains that the rule makes a volunteer liable for *"physical harm* resulting from his failure to exercise reasonable care." Restatement (Second) of Torts § 323 (1965) (emphasis added). Although the plain language of the Restatement limits liability to cases of physical harm, some Texas courts have indicated that the rule may have a broader application. *See, e.g., Peterson v. Mutual Sav. Inst.,* 646 S.W.2d 327, 329 (Tex.Ct.App.1983) (explaining that the rule "has been applied to cases involving only economic injury"); *Bernard Johnson, Inc. v. Continental Constructors, Inc.,* 630

S.W.2d 365, 375 (Tex.Ct.App.1982) (noting that by analogy, "some courts have allowed recovery under the theory of the Restatement in cases involving economic injury and not physical harm").

■ We leave to Texas courts the task of defining the reach of this rule under Texas law. Assuming *arguendo* that a Texas court would apply the assumed duty rule to a case involving economic harm limited to lost profits, we conclude that the rule does not provide a basis for imposing liability on McDonnell Douglas. As Texas courts have uniformly recognized, the rule imposes liability only if: (1) the failure to exercise reasonable care increased the risk of physical harm, or (2) the harm occurs because of the other person's reliance on the undertaking. *See, e.g., Taylor*, 544 S.W.2d at 119–20; *Bernard Johnson, Inc.*, 630 S.W.2d at 375; *see* Restatement (Second) of Torts § 323 (1965).

Texas cases have applied the rule of assumed duty to allocate the predictable risks of harm to those most able to protect against the harm. In *Taylor*, for example, a lender voluntarily obtained fire insurance on an owner's property and then informed the owner that the property was protected. *See Taylor*, 544 S.W.2d at 117. The lender's failure to insure one of the buildings gave rise to a cause of action for negligence when that building burned. *See id.* at 120.

In *Osuna*, a railway installed a crossing signal, even though the signal was not legally required. *Osuna*, 641 S.W.2d at 230. One dark night the signal malfunctioned, and a driver who was relying on the signal plowed into a passing train. *See id.* The court held the railway liable for breaching its duty to maintain the signal. *See id.*

In these cases, it is clear that the tortfeasors either increased the risk of harm or induced the plaintiffs to rely to their detriment on the tortfeasors. The record reflects that McDonnell Douglas in no way increased the risk that Cameronics would breach its contract or that Beard would be unsuccessful in the distributorship.

Moreover, as previously discussed, the only evidence of reliance is Beard's broad assertion that he relied. In contrast, there is overwhelming evidence that before Beard signed the contract, McDonnell Douglas provided nothing more than a vague offer to assist Beard in his dealings with Cameronics. We conclude, therefore, that Beard did not reasonably rely on McDonnell Douglas to protect him from harm.

The only duty that might be imputed to McDonnell Douglas is a duty arising as a result of a contract between Beard and McDonnell Douglas. *See Helms v. Southwestern Bell Tel. Co.*, 794 F.2d 188, 194 (5th Cir.1986); *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 157, 204 S.W.2d 508, 510 (1947). Since we have already determined that no enforceable contract existed, we also conclude that no duty existed.

*Conclusion*

Beard failed to produce enough evidence on the essential element of causation to avoid a directed verdict on his DTPA claim. The record contains no evidence that McDonnell Douglas was a producing cause of any of Beard's alleged damages. On the contract claim, the district court correctly granted a directed verdict for McDonnell Douglas because the record reveals no specific promises made by McDonnell Douglas before Beard entered into the distributorship agreement. Offers to help facilitate communications and to help solve problems are not specific enough to form the basis for a contract claim.

The district court also correctly directed a verdict on the negligence claim because Beard failed to produce evidence that McDonnell Douglas owed any duty to Beard. McDonnell Douglas did not acquire a duty either by undertaking voluntary action or by entering into a contract with Beard. On all three claims, then, we affirm the judgment of the district court.

AFFIRMED.