Greg COFFEY et al., Plaintiffs,

v.

FORT WAYNE POOLS, INC., Defendant.

No. CA3:CV–1605–BC.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 12, 1998.

674

David Scott McCreary, McCreary & Associates, Dallas, TX, for plaintiffs.

Ronald R. Davis, Womble Carlyle Sandridge & Rice, Winston-Salem, NC, Jon A. Bragalone, Beckman Lawson Sandler Snyder

& Federoff, Ft. Wayne, IN, for Fort Wayne Pools Inc., defendant.

Edward M. Campbell, Coppell, TX, pro se.

Louis J. Weber, Dallas, TX, pro se.

## MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Before the court is **Defendant's Motion for Final Summary Judgment,** filed May 30, 1997 and **Plaintiffs' Motion for Summary Judgment,** filed June 2, 1997. Having reviewed the pertinent pleadings and for the reasons that follow, the undersigned **GRANTS** Defendant's Motion for Final Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.

## I. Background [1]

Fort Wayne Pools, Inc. ("FWP") manufactures swimming pool components that are used in assembling in-ground swimming pools. FWP sells most of these components to various independent distributors. After the distributors receive the components from FWP, they proceed to package the components, along with components from other manufacturers, to make a complete pool kit. The completed pool kits are then sold to dealers or contractors. The dealers or contractors purchase the kits from the distributor and resell the parts at a profit to customers. The dealers or contractors also install the in-ground swimming pools in their customers' backyards. In addition to selling swimming pool components, FWP also distributes various promotional materials such as videos, brochures, models and banners.

Plaintiffs are all individuals who contracted with Roger Phelps ("Phelps") for the installation of an in-ground swimming pool that would contain FWP components after meeting Phelps at a Home and Garden show. Phelps was a contractor who installed swimming pools that contained FWP components. At the Home and Garden show, Phelps passed out FWP brochures and displayed a model FWP swimming pool. Prior to entering into contracts with Phelps, plaintiffs all received FWP brochures from Phelps. The brochures contained FWP's logo, address and phone number as well as a clause that read "Fort Wayne Pools, Inc. has been a manufacturer of swimming pool components for over 30 years and we are very selective in selling our components through only the best and most reputable dealers and builders." In addition, the brochures contained a provision that provided "[y]our dealer/builder is an independent business person and not an agent or employee of Fort Wayne Pools, Inc. We cannot and do not accept responsibility for any other representations, statements or contracts made by any dealer/contractor beyond the provisions of our warranty."

The plaintiffs subsequently signed contracts with Phelps and paid Phelps a portion of the contract price. The invoices given to the plaintiffs contained the name "Phelps & Sons" and did not mention FWP. The plaintiffs made their checks payable to either "Ken Phelps" or "Phelps & Sons." Some of the plaintiffs contacted various FWP employees to ask about Phelps after they signed contracts with Phelps. After Phelps received payment from the plaintiffs, he proceeded to dig a large hole in each of the plaintiffs' backyards. However, after digging the holes, Phelps failed to complete the installation of the swimming pools. Consequently, the plaintiffs all had large holes in their backyards until another installer could finish the work. All of the plaintiffs (except the Wests and Warrick) filed criminal charges against Phelps and have been receiving restitution payments. The Wests have received payment for their losses from their insurance company.

On April 16, 1996, Greg Coffey, Laurie Coffey, Tim Lanier, Rebecca Lanier, Kevin Mitchell, Robin Mitchell, Glen South, Lori South, Gary West, Carol West, Terry Peters and Evan Warrick, ("plaintiffs"), filed a complaint in state court against Fort Wayne Pools, Inc. ("FWP"). In their petition, plain-

---

1. These uncontested background facts are taken from the following: plaintiffs' Original Petition, filed April 16, 1996; FWP's Mot. for Summ.J., filed March 30, 1997; Pl.s' Resp. to FWP's Mot. for Summ.J., filed June 20, 1997; FWP's Resp., filed July 11, 1997; Pl.s' Mot. for Summ.J., filed June 2, 1997; and FWP's Resp., filed June 19, 1997. Unless characterized as a contention, all background facts are undisputed.

tiffs alleged FWP was liable for breach of contract, negligence, and violations of the Deceptive Trade Practices–Consumer Protection Act ("DTPA"). On June 7, 1996, defendants removed the action to federal district court. On May 30, 1997, FWP filed the instant motion for summary judgment. In its motion, FWP argues primarily that it is entitled to summary judgment because the plaintiffs' causes of actions are based on the conduct of Phelps and Phelps was not an agent of FWP. On June 2, 1997, the plaintiffs filed a motion for summary judgment seeking a determination that Phelps was an agent of FWP as a matter of law.

## II. Analysis

### A. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). "The substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir.1990). If the non-movant bears the burden of proof at trial, the movant for summary judgment need not support the motion with evidence negating the opponent's case; rather, the movant may satisfy its burden by showing that there is an absence of evidence to support the non-movant's case. *Id.; Little,* 37 F.3d at 1075.

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Little,* 37 F.3d at 1075 (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' ... by 'conclusory allegations,' ... by 'unsubstantiated

assertions,' or by only a 'scintilla' of evidence." *Id.* (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 871–73, 110 S.Ct. 3177, 3180, 111 L.Ed.2d 695 (1990); *Hopper v. Frank,* 16 F.3d 92, 97 (5th Cir.1994); *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1086 (5th Cir. 1994)). Rather, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (*quoting* FED.R.CIV.P. 56(e)).

In determining whether a genuine issue for trial exists, the court must view all of the evidence in the light most favorable to the non-movant. *Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 98 (5th Cir.1996) (per curiam); *Gremillion v. Gulf Coast Catering Co.,* 904 F.2d 290, 292 (5th Cir.1990). If the moving party seeks to establish the absence of a material fact through the submission of affidavits, depositions, admissions, or responses to interrogatories, the non-movant may not rely solely on mere allegations or denials. Rather, the non-movant must demonstrate the existence of an issue of material fact necessitating resolution by trial through similar evidentiary materials setting forth specific facts. FED.R.CIV.P. 56(e); *Lechuga v. Southern Pac. Transp. Co.,* 949 F.2d 790, 794 (5th Cir.1992).

It is with these standards in mind that the undersigned reviews the issues raised by defendants in their motion.

### B. Plaintiffs' Causes of Action

In this case, the plaintiffs contend they are entitled to relief from FWP for breach of contract, violations of the Deceptive Trade Practices Act ("DTPA"), and negligence. The majority of these claims are based on a vicarious liability theory. Specifically, plaintiffs contend that because Phelps was an agent of FWP, FWP is liable for the actions of Phelps. In addition, plaintiffs assert various claims that are independent of the existence of an agency relationship with Phelps. These claims include violations of the DTPA

and a plethora of negligence claims.[2] In analyzing the merits of the cross-motions for summary judgment, this court will first consider whether FWP can be held vicariously liable for the actions of Phelps under an agency theory.

### 1. Agency

The plaintiffs contend that FWP is vicariously liable for the actions of Phelps because Phelps was an agent of FWP. "Under Texas law, agency is a mixed question of law and fact." *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273, 1295–96 (5th Cir.1994) (citations omitted). However, where the evidence is undisputed, the question of whether an agency relationship exists is a question of law for the court. *Campbell v. Hamilton*, 632 S.W.2d 633, 634 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (citation omitted). In this case, because the facts necessary to resolve the agency issue are undisputed, it is proper for this court to determine whether there was an agency relationship between Phelps and FWP as a matter of law.

Plaintiffs argue that FWP is bound by Phelps' actions under three separate theories of agency law. Specifically, plaintiffs argue that FWP is responsible under theories of actual agency, apparent agency, or under the doctrine of ratification. The court will address each of these arguments in turn.

### a. Actual Agency

The plaintiffs first argue that FWP is responsible for Phelps' conduct because Phelps was an agent of FWP. Agency is a legal relationship under which the agent is authorized to act for and on behalf of the principal, and subject to the principal's control. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 269 (5th Cir. 1980) (citations omitted); See Restatement (Second) of Agency § 1 (1958).[3] Under Texas law, an agency relationship must be affir-

matively established, it may not be presumed. *Karl Rove*, 39 F.3d at 1296 (5th Cir.1994) (citations omitted). To prove an agency relationship exists, there must be evidence "from which the court could conclude that '[t]he alleged principal [had] the right to control both the means and the details of the process by which the alleged agent [was] to accomplish the task.'" *Id. (quoting In re Carolin Paxson Advertising, Inc.*, 938 F.2d 595, 598 (5th Cir.1991)). An agency relationship can be established by either an express or implied agreement between the agent and principal. *Lubbock Feed Lots, Inc.*, 630 F.2d at 269 (citations omitted).

In this case it is clear and the parties do not dispute that there was no express agreement between FWP and Phelps that Phelps was to act as agent for FWP. However, the plaintiffs contend that the facts and circumstances surrounding the transactions at issue establish an implied actual agency relationship between Phelps and FWP. Pl.s' Resp. to Def.'s Mot. for Summ.J., p. 11. When determining whether an implied agency relationship exists, it is the manifestations of the alleged principal and agent as among themselves that are dispositive. *Esso Int'l, Inc. v. SS Captain John*, 443 F.2d 1144, 1148 (5th Cir.1971) (citing Restatement (Second) of Agency § 7 (1958)). Thus, this court will consider only the relationship between FWP and Phelps in determining whether there was an implied actual agency relationship between FWP and Phelps.

In its motion, FWP argues that there was no implied actual agency relationship between FWP and Phelps because Phelps was not subject to FWP's control.[4] In support of this argument, FWP points to the fact that Roger Phelps was an independent pool contractor who, at the time of the relevant transactions, was doing business as "Phelps & Sons Custom Homes." FWP contends that the relationship between a manufacturer and

---

**2.** Plaintiffs allege causes of action for negligent entrustment, negligent hiring, negligent supervision, negligent misrepresentation, and negligent selection and training. Pl.s' Brief in Opposition to Def.'s Mot. for Summ.J., p. 36.

**3.** The Fifth Circuit has previously expressed its approval of reliance upon the Restatement (Sec-

ond) of Agency for accurate statements of general agency law. *See Port Ship Service, Inc. v. Int'l Ship Management & Agencies Service, Inc.*, 800 F.2d 1418, 1420 (5th Cir.1986).

**4.** See Def.'s Mot. for Summ.J., p. 9; Def.'s Resp. to Pl.s' Mot. for Summ.J., p. 12.

a dealer of goods does not constitute an agency relationship because the manufacturer is not in position to exercise any control over the dealer.[5]

In Texas, the general rule is that a retailer or wholesaler is not an agent of a manufacturer such that the retailer can bind the manufacturer contractually. *Cafeterias, Inc. v. System–Master, Inc.,* 490 S.W.2d 253, 255 (Tex.Civ.App.—Austin 1973, no writ) (*citing Sparks v. Chrysler Corporation, Airtemp Division,* 353 S.W.2d 477 (Tex.Civ.App.—Beaumont 1961, no writ)). In Cafeterias, a dealer/installer of fire extinguishing systems had no contractual relationship with the manufacturer other than as a dealer with a right to install product of the manufacturer. In that case, an installer would gain the right to install the products after undergoing a brief training period with the manufacturer. After the installer was trained, the manufacturer exercised no further control over the installation of the fire extinguishing systems. Instead, the manufacturer would sell the products to qualified installers who would then sell the products directly to the customers and then install the system. The installer was not an employee of the manufacturer and was not subject to the manufacturer's supervision. In Cafeterias, the installer negligently placed a fire extinguishing system in the plaintiff's restaurant. Three weeks after the system was installed, there was a fire that severely damaged the plaintiff's restaurant because the fire extinguishing system did not work properly. The plaintiff subsequently sued the manufacturer arguing that the manufacturer was responsible because the installer was its agent. The Cafeterias court concluded that there was no agency relationship because there was no evidence that the manufacturer had any right to control the installation of the fire extinguishing system.

Similarly, courts in other jurisdictions have also determined that a retailer or dealer of goods is not an agent of the manufacturer. *See Leon v. Caterpillar Industrial, Inc.,* 69 F.3d 1326 (7th Cir.1995) (holding that under Indiana law, existence of a formal licensing or dealership agreement will not create an agency relationship in the absence of evidence that principal is exercising control over the details of purported agent's work); *Bushendorf v. Freightliner Corp.,* 13 F.3d 1024 (7th Cir.1993) (automobile dealer who merely buys goods from manufacturers for resale to the consuming public is not his supplier's agent); *State ex rel. Bunting v. Koehr,* 865 S.W.2d 351 (Mo.1993) (en banc) (boat motor dealer who purchased motors from the manufacturer for the purpose of reselling them at a profit was not an agent of the manufacturer); *Beckenstein . v. Potter and Carrier, Inc.,* 191 Conn. 120, 464 A.2d 6 (Conn.1983) (no agency relationship between a manufacturer of roofing materials and one of their approved roofers); See Restatement (Second) of Agency § 14J and comment e (1958).[6]

In the instant case, FWP contends that it did not exercise control over Phelps sufficient to make Phelps an agent of FWP. In support of this argument, FWP explains that like the defendant in Cafeterias, FWP was merely the manufacturer who supplied the installer with products. FWP contends that this relationship was not one where FWP could exercise control over Phelps because Phelps was an independent contractor doing business as "Phelps & Sons Custom Homes." In its motion for summary judgment, FWP presented evidence that Phelps had never been an employee of FWP, had no contract with FWP, and was never on FWP's payroll. Def.'s Mot. for Summ.J., Ex. 1, p. 4. FWP also presented evidence that they had no control over any of the contractual terms of the plaintiffs' contracts with Phelps. Id. at 4–5. Further, FWP presents evidence its business is restricted to the manufacture of swimming pool components and that none of

---

**5.** See Def.'s Resp. to Pl.s' Mot. for Summ.J., pgs. 6–12.

**6.** Rest.2d Agen. § 14J provides that "[o]ne who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit."

its employees duties include swimming pool installation. Id. at 4.

In response, plaintiffs argue that the circumstantial evidence surrounding the relationship between FWP and Phelps establishes the existence of an implied actual agency between the parties. In support of this proposition, plaintiffs argue that by generating sales leads for Phelps, promoting Phelps as an "exclusive dealer," and providing Phelps with brochures and other promotional materials containing the FWP logo, FWP created an implied actual agency relationship with Phelps. Pl.s' Resp. to Def.'s Mot. for Summ.J. at 11–12. Plaintiffs also argue that FWP exercised control over Phelp's installation of pools by limiting the number of pool designs that Phelps could install, producing the promotional materials containing the FWP logo, and terminating Phelps' "employment." Pl.s' Mot. for Summ. J., p. 15.[7]

■ Under Texas law, the party seeking to establish an agency relationship has the burden of proving its existence. *Karl Rove & Co.*, 39 F.3d at 1296. To establish the existence of an agency relationship, it is essential that the plaintiffs present evidence from which the court could conclude that "[t]he alleged principal [had] the right to control both the means and the details of the process by which the alleged agent [was] to accomplish the task." *Matter of Carolin Paxson Advertising, Inc.*, 938 F.2d at 598 (citation omitted). Further, under Fed. R.Civ.P 56(c), when a defendant, in a motion for summary judgment, points to an absence of evidence in a plaintiffs' case, the plaintiff has the burden to come forward with specific facts showing there is a genuine issue for trial. This burden is not satisfied by assertions unsupported by facts[8] or a scintilla of evidence.[9] In this case, plaintiffs have failed to set forth specific facts sufficient to establish the existence of an actual agency rela-

tionship between Phelps and FWP and therefore have not met their Rule 56(c) burden.

In an attempt to establish an implied actual agency, the plaintiffs first argue that the fact that FWP made Phelps their "exclusive dealer" in the Dallas area created an implied actual agency. However, this argument is without merit. In Cafeterias, the installer was "a factory authorized installer" of the manufacturer and was the only such installer in the Austin area. Nevertheless, the Cafeterias court found no evidence of an agency relationship between the installer and the manufacturer because the manufacturer did not exercise any control over the installation of the product. *Cafeterias,* 490 S.W.2d at 255. Similarly, in this case, FWP did not exercise any control over Phelps' installation of the plaintiffs' swimming pools.

The plaintiffs next contend that FWP exercised control over Phelps by limiting the type of pool he could install to one of the pools in the FWP brochure. However, the court finds this argument unavailing. Under this rationale, a GM dealership would be an agent of GM because GM exercised control over the dealership by limiting the dealers supply of vehicles to those which GM manufactured. However, it is well-settled that dealers in new automobiles are purchasers from the manufacturer and not agents of the manufacturer. Rest.2d Agen. § 14J, comment e. Further, FWP did not control the day to day details of Phelps' installation or sale of the pools by limiting the selection of pools that Phelps can sell. Similarly, the fact that FWP provided Phelps with sales leads or advertising materials containing the FWP logo does not create an agency relationship. *See Leon,* 69 F.3d at 1336 (forklift retailer was not forklift manufacturer's agent even though manufacturer allowed retailer to use its name and trademark in its advertisements); *House v. Chrysler Corp.*, No. 01–93–00854–CV, 1994 WL 320423 at *1–2 (Tex.

---

**7.** Plaintiffs argue that the July 25, 1994, cease and desist letter drafted by Jon Bragalone constituted a means of "terminating the 'employment' of dealers doing poor work during the final installation." Pl.s' Mot. for Summ.J., p. 15, Ex. 19. The undersigned does not understand the plaintiffs to argue that Phelps was actually an employee of FWP in the traditional sense not-

withstanding the plaintiffs' use of the term "employment" in the above quote.

**8.** Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046–47 (5th Cir.1996).

**9.** Anderson, 106 S.Ct. at 2512.

App.—Houston [1st Dist.] July 7, 1994) (car dealer was not an actual agent of manufacturer and had no apparent authority to act for manufacturer where dealer exhibited signs, advertisements and pamphlets with the manufacturer's name on them). In addition, the FWP brochures used by Phelps contained language that expressly stated that pool installers were not agents of FWP.

Finally, the cease and desist letter from Mr. Bragalone to Phelps does not establish that FWP controlled Phelps. In the letter, Mr. Bragalone advised Phelps to stop representing to consumers that he had the ability to acquire and install FWP products because he was no longer able to acquire the FWP products from BLN, FWP's distributor. Pl.s' Mot. for Summ.J., Ex. 19. This letter does not acknowledge any control or agency relationship between FWP and Phelps. Instead, it merely instructs Phelps not to misrepresent his ability to acquire FWP products.

In this case, the plaintiffs have failed to produce any evidence that FWP controlled the sale or installation of the pools that Phelps sold to them. It is undisputed that Phelps was an independent contractor doing business under the name "Phelps and Sons Custom Homes" and was not on the FWP payroll. Phelps used his own tools and hired his own employees to assist him. Further, Phelps was not trained on pool installation by FWP employees.[10] Phelps could not even purchase all the parts needed to complete a pool from FWP because FWP does not manufacture all the necessary components. Also, it is undisputed that Phelps received payment directly from the plaintiffs and FWP had no control over the individuals Phelps contracted with or the terms of such con-

tracts. Further, FWP did not supervise or control the details of the installation of the pools or have any employees on their payroll whose duties included pool installation. In sum, it is clear from the evidence that FWP manufactured pool components and Phelps purchased those components to sell them at a profit along with a fee for the actual installation.[11] The principal's right to control an agent is an essential element of an actual agency relationship and the plaintiffs have not produced any evidence that FWP had a right to control Phelps' installation of the swimming pools. Under these circumstances, there is insufficient evidence for a trier of fact to infer the existence of either an express or implied actual agency relationship between Phelps and FWP. Thus, FWP is not liable for Phelps' actions under an actual agency theory.

### b. Apparent Authority

 The plaintiffs next argue that even if there was no actual agency relationship between Phelps and FWP, FWP is still liable because Phelps was vested with apparent authority to act on its behalf. Under Texas law, to establish apparent authority, a plaintiff must show that a principal either knowingly permitted an agent to hold himself out as having authority or showed such a lack of ordinary care as to clothe an agent with indicia of authority. *NationsBank N.A. v. Dilling*, 922 S.W.2d 950, 952–53 (Tex.1996) (citing *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex.1984)). To prevail, a plaintiff must then prove that "when dealing with the supposed agent, he has relied on the agent's authority in good faith, in the exercise of reasonable prudence." *Wells Fargo Busi-*

---

10. Plaintiffs claim that Phelps received guidance on pool installation from Robert Coffey, of FWP, and Tim Bowling, a BLN employee. However, the evidence in support of that proposition merely indicates that Coffey and Bowling examined some of Phelps' prior installation jobs and found them to be satisfactory, not that they trained Phelps. Pl.s' Resp. to Def.'s Mot. for Summ.J., Ex. 1, p. 35–36. Unsubstantiated assertions are not enough to withstand a summary judgment motion. Also, FWP could not control the details of Phelps' installation by merely providing a suggested specifications sheet. See Pl.s' Mot. for Summ.J., Ex. 21.

11. This indicates that another element of an agency relationship is lacking, that the alleged agent act on behalf of the alleged principal. See n. 6, *supra*. If Phelps was reselling the FWP components at a profit, he was acting on his own behalf. FWP did not directly benefit from any of Phelps' sales. Phelps testified in his deposition that a pool kit would cost on average between $1,700 and $2,100 and the plaintiffs' contracts with Phelps were valued at between $13,000 and $25,000. Pl.s' Mot. for Summ.J., p. 18, and Ex. 1 at 80.

*ness Credit v. Ben Kozloff, Inc.,* 695 F.2d 940, 945 (5th Cir.1983), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (citation omitted).

In determining whether an agent has apparent authority, a court may only consider the principal's conduct. *Nations-Bank,* 922 S.W.2d at 952–53. The actions or representations of the agent may not be considered. *Southwest Title Ins. Co. v. Northland Building Corp.,* 552 S.W.2d 425, 428 (Tex.1977); *Humble National Bank v. DCV, Inc.,* 933 S.W.2d 224, 237 (Tex.App.—Houston [14th Dist.] 1996, writ denied). "Without the principal's participation, either through his acts or knowledge of, and acquiescence in, those of the agent, no mere combination of circumstances which may mislead persons into a false inference of authority, however reasonable, will serve as a predicate for apparent authority." *Southwest Land Title Co. v. Gemini Financial Co.,* 752 S.W.2d 5, 7 (Tex.App.—Dallas 1988, no writ) (citation omitted). Moreover, it is incumbent upon a party dealing with an agent to ascertain both the fact and the scope of the agent's authority. *Humble National Bank,* 933 S.W.2d at 237. If the party decides to deal with the agent without determining the fact and scope of the agent's authority, they do so at their own risk. *Id. (citing Elliot Valve Repair v. B.J. Valve & Fitting,* 675 S.W.2d 555, 561 (Tex.App.—Houston [1st Dist.] 1984), rev'd on other grounds, 679 S.W.2d 1 (Tex.1984)). Finally, apparent authority is not available where the third party has notice of the limitations of the agent's power. *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 779 (Tex. 1974).

In its motion for summary judgment, FWP argues that it cannot be held vicariously liable for Phelps' actions on an apparent authority theory because it never took any action that would lead a reasonably prudent person to believe that it had authorized Phelps to enter into contracts on its behalf. As explained above, under Texas law, to establish apparent authority, a plaintiff must show that a principal either knowingly permitted an agent to hold himself out as having authority or showed such a lack of ordinary care as to clothe an agent with indicia of authority. *NationsBank,* 922 S.W.2d at 952–53.

The plaintiffs claim that a "chain of communication" between Robert Coffey, an employee of FWP, and Roger Phelps is sufficient for FWP to be bound by Phelps' actions on an apparent agency theory. Pls' Brief in Opposition to Def.'s Mot. for Summ.J., p. 13. Specifically, the plaintiffs allege that a letter written by Robert Coffey and sent to Mr. Lanford constituted FWP's link in the chain of communications. However, even if this letter could constitute the first link in the alleged chain, the plaintiffs' evidence, either by the plaintiffs' own admissions or because they did have any contact with Mr. Lanford until after their contract was signed,[12] clearly indicates that none of the plaintiffs relied on this letter Consequently, because reliance is a necessary element of apparent authority, the plaintiffs' chain of communications argument is without merit. *Wells Fargo,* 695 F.2d at 946.

The plaintiffs next argue that by providing Phelps with promotional materials containing the FWP logo that FWP clothed Phelps with indicia of authority. Pl.s' Mot. for Summ.J., p. 10. However, the plaintiffs fail to support this argument with citation to any cases holding that a manufacturer is liable on an apparent agency theory where a customer views a dealer's promotional materials that contain a manufacturer's logo. Recently, a Texas appellate court confronted with this issue held that a manufacturer is not liable under an apparent agency theory merely because their dealer exhibited signs, advertisements, and pamphlets with the manufacturer's logo. *House v. Chrysler Corp.,* No. 01–93–00854–CV, 1994 WL 320423, at *1–2 (Tex.App.—Houston [1st Dist.] July 7, 1994).

In House, the court compared the factual setting in this type of case to those cases involving oil companies and their service station lessees. The court noted that in the oil

---

**12.** Coffey Dep. at 36–38; South Dep. at 103; Peters/Warrick Dep. at 97–99; West Dep. at 71– 72; Lanier Dep. at 16–17; Mitchell Dep. at 113.

company context, Texas courts have consistently held that if the oil company lacks control over details of the service station's work, it is not liable for the acts of the station's employees even though the oil company owns the premises and displays its signs, ads and logo. *Id. at *2 (citing Texas Co. v. Wheat*, 140 Tex. 468, 168 S.W.2d 632, 635 (Tex.1943); *Beckham v. Exxon Corp.*, 539 S.W.2d 217, 220 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *Ackley v. State*, 592 S.W.2d 606, 608 (Tex.Crim.App.1980) (emphasizing similarity between employment and agency relationships)). In the absence of any contrary authority, the court finds the above reasoning persuasive. Thus, in this case, FWP did not clothe Phelps with indicia of authority sufficient to establish an apparent agency by supplying Phelps with promotional materials containing the FWP logo.[13]

The plaintiffs also argue that the Greg and Laurie Coffey and Glen and Lori South were told by an employee of FWP that Phelps was a reputable contractor. Pl.s' Resp. to Def.'s Mot. for Summ.J., p. 12. However, in their depositions, which plaintiffs have attached to their pleadings as exhibits, both couples admitted that the conversations referred to above did not occur until after they signed the contract with Phelps. Coffey Dep. at 112; South Dep. at 78. Consequently, the Coffeys could not have relied on any statements by the FWP employee when entering the contract with Phelps. Thus, because reliance is an essential element of an apparent agency, the Coffey's cannot establish an apparent agency based upon their phone call to FWP. *Wells Fargo*, 695 F.2d at 946.

The plaintiffs also argue that FWP is bound by an apparent agency because of various statements and conduct by Phelps. Pl.s' Mot. for Summ.J., at 19–21. However, as stated above, to determine if an apparent agency exists, a court may only consider the conduct of the alleged principal and not the conduct or representations of the alleged agent. *NationsBank*, 922 S.W.2d at 953; *See Kral, Inc. v. Southwestern Life Ins. Co.*, 999 F.2d 101, 104 (5th Cir.1993) (to establish an apparent agency, plaintiffs must show representations were made by alleged principal not the alleged agent). Thus, none of the actions or statements of Phelps will be considered by this court to establish an apparent agency.[14]

In this case, there is simply no evidence of any conduct by FWP upon which the plaintiffs could have reasonably relied prior to the time they signed their contract with Phelps. Further, the undisputed facts concerning the plaintiffs transactions are inconsistent with the plaintiffs contentions that Phelps had apparent authority to act on behalf of FWP. First, as stated previously, all of the signed contracts with Phelps or the name of his business on the invoice. Second, all of the plaintiffs made their checks payable either to Phelps or Phelps and Sons. *See Kral, Inc.*, 999 F.2d at 104 (facts were inconsistent with the existence of an apparent agency where plaintiffs made check payable to purported agent and not alleged principal). Third, the plaintiffs who financed their purchases did so through Phelps and not FWP. Fourth, the plaintiffs all received FWP brochures that indicated that the pool installers were independent contractors and not agents of FWP. Fifth, FWP was not even aware of the existence of Phelps' contracts with the plaintiffs until after disputes arose concerning the installation of the pools. *See Rourke v. Garza*, 530 S.W.2d 794, 803 (Tex.1975) (to be bound under an apparent agency theory, it is essential that the alleged principal had knowledge of all the material facts at the time of the relevant conduct). Since FWP was not even aware of the existence of the contracts, they certainly could not have knowledge of all the material facts of the transactions between

---

13. Moreover, as explained previously, the brochures containing the FWP logo also contained a disclaimer indicating that the pool installers were not agents for FWP.

14. The plaintiffs also imply that FWP is liable under an apparent agency theory because Phelps extended FWP's warranty on its components to the plaintiffs. Pl.s' Mot. for Summ.J., at 19.

However, the fact that a dealer can extend a manufacturer's warranty to the purchaser does not create an agency relationship for other purposes. See Rest.2d Agen. § 14J, comment e; *Bunting*, 865 S.W.2d at 354 (no agency relationship created by dealer's obligation to inform purchaser of the manufacturer's warranty).

Phelps and the plaintiffs. In sum, plaintiffs cannot establish that Phelps was vested with apparent authority to bind FWP contractually.

### c. Ratification

The plaintiffs next argue that FWP is liable because it ratified the contracts between the plaintiffs and Phelps. Under Texas law, ratification occurs when a principal, who has no knowledge of the unauthorized acts of his agent, retains the benefits of the transaction after acquiring full knowledge. *Land Title Company of Dallas, Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex.1980) (citations omitted). "The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge." *Id.* Texas courts have confined the applicability of the doctrine of ratification to situations where the act in question was done on behalf of the alleged ratifier and not where the act is for the benefit of the agent or some other party. *Enserch Corp. v. Eli Rebich*, 925 S.W.2d 75, 84 (Tex.App.—Tyler 1996, writ dismissed); *Spangler v. Jones*, 861 S.W.2d 392, 396 (Tex.App.—Dallas 1993, writ denied); *Herider Farms–El Paso, Inc. v. Criswell*, 519 S.W.2d 473, 477 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.); See Restatement (Second) of Agency § 82.

In its motion for summary judgment, FWP argues that FWP did not ratify Phelps' actions because Phelps was not acting on FWP's behalf and FWP was not aware of all the material facts of the plaintiffs' contracts with Phelps. Def.'s Brief in Support of its Mot. for Summ.J., at 12. In response, plaintiffs argue that after FWP learned about the details of the plaintiffs' transactions with Phelps, FWP failed to refund the plaintiffs' money or offered to complete the pools at no charge. Pl.s' Brief in Opposition to Def.'s Mot. for Summ.J., p. 16. The plaintiffs also contend that FWP benefitted from the plaintiffs' transactions with Phelps because FWP sold swimming pool components to BLN, BLN then sold the components to Phelps and Phelps sold the components to plaintiffs. Pl.s' Resp. to Def.'s Mot. for Summ.J., p. 9.

Here, although FWP may have received some indirect benefit from the plaintiffs' transactions, the attenuated relationship between the transactions and the purported benefits to FWP indicates that Phelps was not acting on behalf of FWP when he contracted with the plaintiffs. As explained above, it is undisputed that the plaintiffs all made their checks payable to "Roger Phelps" or "Phelps and Sons" and the invoices for the transactions contained the name of "Phelps & Sons" and not FWP. It is undisputed that FWP does not install swimming pools or even produce all of the parts needed to build a complete swimming pool.[15] Instead, FWP simply manufactures swimming pool components and sells them to a distributor. Thus, it is clear that Phelps was acting on his own behalf when he contracted with the plaintiffs for the installation of a pool. The benefit to Phelps was the fee he charged for installation as well as any mark up on the swimming pool components. See n. 11, *supra*. As discussed previously, this court has concluded as a matter of law that Phelps executed the contracts in his capacity as an individual and the owner of Phelps & Sons and not as the agent for FWP. Because the contracts were not entered into for or on behalf of FWP, this court determines as a matter of law that FWP could not have ratified these agreements. Accordingly, FWP is not liable for Phelps' actions under a ratification theory.

In sum, because this court finds that there was no agency relationship between Phelps and FWP, FWP cannot be held vicariously liable for any of Phelps' actions. Consequently, in analyzing plaintiffs' causes of actions against FWP, this court will not take into account any of Phelps' conduct. The court will first address the plaintiffs' action for breach of contract.

### 2. Breach of Contract

In this case, the plaintiffs' breach of contract action is based on their contracts

---

**15.** FWP does not manufacture the pumps, plastic tubing, filters, skimmer and concrete necessary to construct a complete pool. Def.'s Mot. for Summ.J., Ex. 1, p. 2.

with Phelps for the installation of swimming pools. Pl.s' Brief in Opposition to Def.'s Mot. for Summ.J., p. 22–23. As explained in detail previously, plaintiffs' cannot hold FWP vicariously liable for the actions of Phelps because Phelps was not FWP's agent. Consequently, FWP was not a party to the contract allegedly breached. *Cf. Whataburger, Inc. v. Rutherford*, 642 S.W.2d 30, 34 (Tex.App.—Dallas 1982, no writ) (defendant was a party to any contract resulting from a promotional contest as a co-principal where its vice-president authorized the use of defendant's name in connection with the promotion and approved of the concept). Accordingly, FWP is entitled to summary judgment on the plaintiffs' breach of contract claims. *Pierson v. Houston Indep. Sch. Dist.*, 698 S.W.2d 377, 381–82 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (summary judgment proper where the evidence establishes that no agency relationship exists upon which the defendant could be held vicariously liable).

### 3. DTPA Claim

The plaintiffs assert that FWP violated the DTPA by breaching express and implied warranties that their pools would be constructed in a workmanlike manner, falsely representing that the pools would be constructed in accordance with approved standards and by committing an unconscionable act. Pl.s' Petition at 9–10. In its motion for summary judgment, FWP argues that it is entitled to summary judgment on the plaintiffs' DTPA claims for the following reasons: (1) the plaintiffs are not "consumers" under the DTPA; (2) FWP's actions were not the "producing cause" of the plaintiffs' damages; (3) the statute of frauds bars any claims related to any guarantees made by FWP to answer for Phelps' actions; (4) the Coffeys' failed to provide proper notice under the DTPA; (5) some of the plaintiffs' claims are barred by the statute of limitations; and (6) that plaintiffs' DTPA claims are essentially the same claims as their contract claim. Def.'s Brief in Support of its Mot. for Summ.J. at 15–20.[16]

Under the DTPA, consumers may maintain a cause of action for false, misleading or deceptive acts or practices. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1995). To prevail on a DTPA claim, a consumer must prove that a defendant violated a specific provision of the Act and that this violation was a producing cause of the consumer's injury. *Id.* (citations omitted). " 'Although a consumer suing under the DTPA need not establish contractual privity with the defendant, he must show that the defendant has committed a deceptive act which is the producing cause of the consumer's damages.' " *Qantel Business Systems, Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 305 (Tex.1988) (*quoting Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987)). Consumers may show that a defendant is vicariously liable for DTPA violations by employing the traditional common law theories of agency or respondeat superior. *Id.* However, consumers may not establish DTPA liability based on the mere existence of a relationship between the parties or the fact that the parties were "inextricably intertwined." *Id.*

In this case, as discussed above, Phelps is not an agent of FWP under any of the theories set forth by the plaintiffs. Consequently, plaintiffs cannot premise FWP's alleged DTPA liability upon Phelps' conduct.[17] *See Eckler v. General Council of the Assemblies of God*, 784 S.W.2d 935, 941 (Tex. App.—San Antonio 1990, writ denied) (no DTPA liability where alleged principal was not liable for actions of purported agent on an agency theory). Instead, this court will consider whether the plaintiffs have shown that FWP has actually committed a deceptive act. *Guerra*, 733 S.W.2d at 136.

Here, the plaintiffs allege that employees of FWP made misrepresentations to them concerning their pools. First, plaintiffs contend that Jay Scott, an FWP employee made a misrepresentation to Mr. Mitchell. Pl.s'

---

**16.** The court finds as a matter of law that FWP was not a producing cause of the plaintiffs' damages. Consequently, it is not necessary to address all of defendant's arguments.

**17.** Thus, FWP made no misrepresentations to the Lanier's because they admit they had no contact with anyone other than Phelps. Pl.s' Resp. to Def.'s Mot. for Summ.J., Ex. 7 at 97–99.

Resp. to Def.'s Mot. for Summ.J. at 16.[18] Specifically, Mitchell claims that Scott told him that an FWP vice-president would contact Phelps and ask Phelps to provide the vice-president with a schedule for the completion of the Mitchell's pool, which would then be communicated to Mitchell. Pl.s' Resp. to Def.'s Mot. for Summ.J., Ex. 6 at 48–50. Mitchell admits that a schedule was provided, but contends that by providing the schedule FWP implied that they would finish the pool. Id. at 50.

■ Second, the Mr. West contends that FWP breached an agreement to provide them with a swimming pool. Pl.s' Resp. to Def.'s Mot. for Summ.J. at 16–17. This alleged misrepresentation, like the misrepresentation to Mitchell, was also implied by the plaintiffs. Specifically, Scott allegedly told West that FWP would do whatever is necessary to make sure they were satisfied. Pl.s' Resp. to Def.'s Mot. for Summ.J., Ex. 9 at 97–100. In his deposition, West explained that Scott's statement constituted an agreement for FWP to provide them with a swimming pool because such an act would have satisfied Mr. and Mrs. West. Id. at 100.[19] West also admitted that at the time Scott made the statement, he believed that Scott intended to fulfill his promises. Id. at 102.

In *Charles E. Beard, Inc. v. McDonnell Douglas Corp.*, 939 F.2d 280 (5th Cir.1991), a distributor of a manufacturer's products brought suit to enforce the alleged oral guarantees of the manufacturer's performance which were made by the defendant. In that case, the defendant had an agreement to provide marketing assistance for the manufacturer. After plaintiff agreed to distribute the product, an employee of the defendant told the plaintiff he would solve any problems that arose with the manufacturer's product.

But, the defendant did not participate in any of the original negotiations between the manufacturer and the distributor. A short time after the agreement between the manufacturer and distributor was made, the distributor plaintiff found the product to be unsatisfactory and sued defendant for violations of the DTPA, breach of contract and negligence. The trial court granted the defendant's motion for a directed verdict because the DTPA does not attach derivative liability for innocent involvement in a business transaction and because the plaintiff failed to produce any evidence that the defendant was a producing cause of the plaintiff's damages.[20] *Charles E. Beard, Inc. v. Cameronics Technology Corp.*, 729 F.Supp. 528, 532 (E.D.Tex. 1989) (*citing Qantel Business Systems, Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 305 (Tex.1988)).

The Fifth Circuit affirmed the lower court's ruling on the grounds that the plaintiff presented no evidence that the defendant was a producing cause of any of the plaintiff's alleged damages. *Beard*, 939 F.2d at 282. The court explained that at most, the defendant's employees gave the plaintiff "vague assurances that if anything went wrong, the company would help." Consequently, the court conclude that as a matter of law, the plaintiff could not establish the causation element of their DTPA claim, i.e., that the defendant was a producing cause of their damages. *Id.* at 282–83.[21]

Similarly, in this case, the representations that Scott made to West and Mitchell were not the producing cause of the plaintiffs' damages. Just like the representations made by the defendant in Beard, the statements in this case were made after the agreement was signed between the contracting parties. Further, in this case, FWP was not involved in any of the contract discus-

---

**18.** Plaintiffs also assert that Robert Coffey, an FWP employee, made misrepresentations to Mr. Mitchell. *However, in his deposition, Mr. Mitchell states that he does not recall ever speaking to Coffey.* Mitchell Dep. at 48. Thus, the plaintiffs' allegations concerning alleged misrepresentations by Coffey are conclusory and unsubstantiated.

**19.** To the extent plaintiffs rely on any oral guarantees of Phelps' performance made by FWP, those claims are barred unless they are in writ-

ing. TEX.BUS. & COM.CODE § 26.01(b)(2) (Vernon 1987). Here, there is no evidence of any writing. Thus, any guarantees are unenforceable.

**20.** The court also held that plaintiff failed to the defendant send timely notice of its DTPA action.

**21.** The court did not address the other grounds for the lower court's ruling.

sions between Phelps and the plaintiffs. Instead, FWP only communicated with the plaintiffs after their contracts were signed. Thus, under Beard, the statements by FWP could not be the producing cause of the plaintiffs' damages.

■■■ Moreover, the statements in this case are not the type of misrepresentations that are actionable under the DTPA. Here, FWP told Mitchell that they would obtain a schedule from Phelps and inform Mitchell of the proposed completion date. As explained above, FWP did provide Mitchell with a schedule as promised. Thus, this statement was not even a misrepresentation. Second, after Phelps already breached his contract with West by not installing the West's pool in a timely fashion, FWP told West that they would do what is necessary to satisfy them. However, the plaintiffs have presented evidence that at the time Scott made those statements, West believed that Scott intended to perform and that if Scott's statements are misrepresentations it is because they later turned out to be false. Pl.s' Resp. to Def.'s Mot. for Summ.J., Ex. 9, p. 102. It is well-settled that "[t]he mere failure to perform a promise does not constitute a misrepresentation actionable under the DTPA unless it can be shown that at the time the promise was made, the party making the promise had no intentions of fulfilling the promise." Bay Colony, Ltd. v. Trendmaker, Inc., 121 F.3d 998, 1006 (5th Cir.1997) (citing Kuehnhoefer v. Welch, 893 S.W.2d 689, 693 (Tex.App.—Texarkana 1995, writ denied)). Thus, the plaintiffs' own evidence establishes that Scott's alleged misrepresentation to West is not actionable under the DTPA. Therefore, these statements by Scott are not sufficient to withstand FWP's motion for summary judgment on the plaintiffs' DTPA claims. Under Rule 56(c), once FWP pointed to a lack of evidence to support their claim, it became incumbent upon the plaintiffs to come forward with specific facts showing a genuine issue for trial. In the absence of any proof, the courts in the Fifth Circuit will not "assume that the non-moving party could or would prove the necessary facts." McCallum Highlands, Ltd. v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir.1995).

In sum, the plaintiffs' essential complaint is that their pool was not installed in a timely fashion by Roger Phelps, as agent for FWP. Pl.s' Resp. to Def.'s Mot. for Summ.J., p. 16. The plaintiffs do not contend that the components supplied by FWP were defective. In this case, Phelps was not an agent for FWP and the plaintiffs cannot prevail against FWP by merely showing that there was a relationship between Phelps and FWP. The plaintiffs must show that FWP actually engaged in a violation of the DTPA. Here, the plaintiffs have not satisfied their burden under Rule 56(c) to set forth specific facts showing a genuine issue for trial. There is simply no indication that any action by FWP was a producing cause of the plaintiffs' damages. Accordingly, FWP's motion for summary judgment on this issue must be granted.

■■■ In addition, FWP is also entitled to summary judgment on this issue because the plaintiffs' DTPA claim is essentially the same claim as their breach of contract claim. In Crawford v. Ace Sign, Inc., 917 S.W.2d 12 (Tex.1996), the Texas Supreme Court explained that a plaintiff cannot premise a DTPA claim on a defendant's failure to perform under a contract. Here, all of the damages incurred by the plaintiffs arose because their pools were not installed within the period of time provided by their contracts. Further, as explained previously, the plaintiffs' contracts were with Phelps and not with FWP or one of its agents. Thus, because plaintiffs cannot premise a DTPA claim on the nonperformance of a contract, FWP is also entitled to summary judgment on plaintiffs' DTPA claims under Crawford, supra.[22]

22. The plaintiffs argue that this case is distinguishable from the facts of Crawford because of various factual differences, e.g. the plaintiffs in this case are homeowner's, etc. Pl.s' Brief in Opposition to Def.'s Mot. for Summ.J., p. 30–31. However, nothing in the Crawford opinion indicates that the holding was fact specific. Indeed, the court seemed especially concerned about the implications of every breach of contract claim being converted into a DTPA claim. Crawford, 917 S.W.2d at 14. Accordingly, this court believes that Crawford applies to these facts notwithstanding any slight factual differences.

#### 4. Negligence Claims

Plaintiffs also allege FWP is liable for their damages under various negligence theories. Pl.s' Original Petition, p. 10; n. 2, *supra.* As explained previously, plaintiffs have not established the existence of an agency relationship between Phelps and FWP. Consequently, plaintiffs cannot hold FWP liable under for Phelps' alleged negligence under the doctrine of respondeat superior. *Pierson v. Houston Indep. Sch. Dist.*, 698 S.W.2d 377, 382–82 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

 Moreover, all of the plaintiffs' negligence claims are precluded under the economic loss doctrine. It is well-settled Texas law that a plaintiff cannot maintain a tort action against a defendant when his damages are only for economic losses caused by the failure to perform a contract. *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex.1991); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986). Here, from an examination of the plaintiffs' original petition, it is clear that other than the claims for punitive damages and attorney's fees, all of the alleged damages were incurred, either directly or indirectly, because plaintiffs' pools were not completed in a timely fashion. Thus, while the plaintiffs have pleaded a cause of action for negligence, they clearly seek to recover for losses sustained by Phelps' failure to perform the contract. Accordingly, FWP's motion for summary judgment on this issue must be granted.

 The court is aware that the Texas Supreme Court has recently held that the economic loss doctrine does not bar recovery of tort damages for fraudulent inducement. *Formosa Plastics Corp. v. Presidio Eng'rs and Contractors, Inc.*, 40 Tex.Sup.Ct.J. 877, 1997 WL 378129 (Tex. July 9, 1997). Here, plaintiffs seem to imply that they have asserted a claim for common law fraud independent of their DTPA claim, even though such an action is not contained in their Original Petition. Pl.s' Brief in Opposition to Def.'s Mot. for Summ.J., p. 35. To prevail on a fraud action, a plaintiff must establish FWP made " 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, and which causes injury.' " *Formosa Plastics Corp. v. Presidio Eng'rs and Contractors, Inc.*, 40 Tex.Sup. Ct.J. 877, 1997 WL 378129 at *7 (Tex. July 9, 1997) (citation omitted). Thus, it is incumbent upon the plaintiff to present evidence that FWP made "representations with the intent to deceive and with no intention of performing as represented." *Id.* (citation omitted).

 Here, the only alleged misrepresentations that can be traced to FWP were made by Scott. As explained previously, the plaintiffs do not present any summary judgment evidence from which one could conclude that the statements were made with the intent to deceive. *Supra*, p. 27–28. Consequently, even if the plaintiffs have asserted a claim for fraud, FWP is entitled to summary judgment on this issue.[23]

### III. Conclusion

For the foregoing reasons, the undersigned **ORDERS** the following:

(1) that **Defendant's Motion for Final Summary Judgment,** filed May 30, 1997, be **GRANTED;**

(2) that **Plaintiffs' Motion for Summary Judgment,** filed June 2, 1997, be **DENIED.**

---

**23.** FWP is also entitled to summary judgement on the plaintiffs' breach of the duty of good faith and fair dealing claim. Under Texas law, "[t]here is no general duty of good faith and fair dealing in ordinary, arms-length commercial transactions." *Formosa Plastics Corp. v. Presidio Eng'rs and Contractors*, 40 Tex.Sup.Ct.J. 877, 1997 WL 378129 at *10 (Tex. July 9, 1997) (citations omitted).